**ATTORNEY GENERAL OF the UNITED STATES of America, Plaintiff,**

v.

**COVINGTON & BURLING, Defendant.**

Civ. A. No. 75–1238.

United States District Court,
District of Columbia.

April 23, 1976.

Earl J. Silbert, Richard L. Thornburgh, Justin O'Shea, Homer H. Kirby, Jr., Brian K. Ahearn, Attys., Dept. of Justice, for plaintiff.

Erwin N. Griswold, Washington, D. C., for defendant.

## OPINION AND ORDER

SIRICA, District Judge.

The Attorney General in this case is seeking an injunction ordering Covington & Burling ("C&B"), a Washington, D.C. law firm, to allow officials of the Justice Department to inspect certain documents the firm has withheld relating to its representation of the Republic of Guinea. He claims his delegates have a right to see these documents under the Foreign Agents Registration Act, 22 U.S.C. §§ 611 to 621 (1970).

### I.

C&B initially registered under the Act as an agent of the Republic of Guinea in May of 1967, and has periodically updated its registration statement as required. Until recently, when Guinea terminated its asso-

ciation with the firm, C&B advised and represented the country quite actively. Its main efforts seem to have been centered on counseling Guinea on a project the country had undertaken to exploit its bauxite resources. To that end, C&B assisted Guinea in its negotiations with those foreign corporations—including American ones—which had agreed to mine the bauxite. The law firm also helped negotiate loans for the project from the World Bank, from the United States Agency for International Development, and from the United States Export-Import Bank. During the course of these negotiations, members of the firm met with the lawyers and staff of the Agency for International Development and of the Export-Import Bank, and also with the Guinea desk officer of the State Department and the U.S. Ambassador to Guinea.

C&B also assisted Guinea in other smaller matters. For example, it advised the country on certain contract claims Guinea might have against those corporations that had agreed to mine Guinea's bauxite, and it represented Guinea in a New York state court on a contract dispute arising from Guinea's exhibit at the World's Fair there in 1964.

In January of 1975, officials of the Justice Department sought to inspect the records C&B had maintained with respect to its relationship with Guinea. The firm allowed them to see approximately 95 percent of these records; the remaining five percent of the documents, which apparently related to nearly every area in which the firm has assisted Guinea, and amounts to about 1,000 pages, C&B refused to let the government inspect. As its reason for withholding these particular documents, the firm stated then that the documents related to confidential communications between Guinea and the firm regarding legal matters. Although it has given other reasons for not allowing officials of the Justice Department to inspect these documents,[1]

---

1. C&B has given two other reasons for withholding these documents: (1) that it only registered under the Act out of an abundance of holding these documents: (1) that it only registered under the Act out of an abundance of caution and is not really subject to it at all; (2)

C&B's main contention continues to be that the Foreign Agents Registration Act recognizes an attorney-client privilege that protects these documents. The Attorney General's simple response is that no such privilege exists under the Act.[2]

## II.

The Foreign Agents Registration Act is a disclosure statute. It provides, generally, that every "agent of a foreign principal," as that term is defined in 22 U.S.C. § 611(c) and (d), must, unless exempted from doing so by § 613, file a registration statement with the Attorney General which discloses the particulars of the agent's activities on behalf of his foreign principal, and also must file copies of any "political propaganda" the agent publicizes on the principal's behalf. 22 U.S.C. §§ 612, 614. The Attorney General, in turn, must make information contained in these filings available to the public and to interested parties in government. 22 U.S.C. § 616.

In order to insure that each agent makes an accurate disclosure of these filings, Congress has given the Attorney General the power to require that certain records relating to the activities which the agent must disclose under §§ 612 and 614 be kept by the agent and has given to the Attorney General's delegate the power to require that the agent permit the delegate to inspect these records. 22 U.S.C. § 615. It is with the extent of the power given in § 615 that this case is primarily concerned.

Upon review of the general outline of the Act and of § 615's place in it, it is somewhat difficult to see how the values that the attorney-client privilege is designed to protect could be in danger here. The purpose of the attorney-client privilege is to aid the orderly and efficient administration of justice. The presumption behind it is that if a client is free to communicate frankly with his attorney, to disclose the unfavorable, embarrassing and secret portions of his problem as well as the helpful and already public ones, the attorney will be able to give the soundest legal advice and perhaps avoid the cost of litigation, or to render the best legal representation in court and thereby lead to a just resolution of the dispute. A privilege that would prevent an attorney from disclosing matters that would tend to reveal such confidences without the client's permission, it is thought, would encourage a client to speak frankly and would therefore aid the administration of justice. This is the attorney-client privilege. See *McCormick, Evidence* § 87 (1972).

It is easy for the Court to visualize a situation in which a document that would be helpful to the government in determining whether an agent has made an accurate disclosure under the requirements of the Act would, if completely disclosed, tend to reveal a client-attorney confidence. It is more difficult to understand, however, why a foreign principal would object to the disclosure of such a document to a certain few officials of the Justice Department acting as delegates of the Attorney General under the Act. The question is, would the disclosure of a document containing an attorney-client confidence to a few persons, who are primarily interested in whether the agent who has registered under the Act has adequately fulfilled his statutory obligations, have a substantial inhibiting effect on the foreign principal in his communications with his attorney-agent. The Court would agree that it is very unlikely that disclosure to these officials would result in public disclosure of confidential conversations between the foreign interest and its attorney-agent.

The foreign principal may fear, however, that these persons at the Justice Department might, intentionally or not, directly or

---

and that none of the documents relates to an activity for which registration is required, and the Act therefore does not require disclosure of them. For purposes of argument, however, the firm is willing to have it assumed that both these arguments have failed.

2. The Attorney General has also suggested that, even if the privilege should exist under the Act, it may have been waived by the client. The Court has found nothing in the record, however, to support this possibility.

indirectly, disclose the confidences to persons who might make use of the embarrassing, unfavorable or secret information against the principal. In fact, there is no express provision in the Act which would deter an official in the Justice Department from doing this. Nor does there appear to be any statute elsewhere which would do so. Compare 18 U.S.C. § 1905 (1970). Nor does it appear that injunctive relief would be helpful, since a decree probably could not be obtained before the damage was done. In the end, the foreign principal would simply have to rely on the good faith of the Attorney General's delegates at the Justice Department.

Were foreign principals not the clients here, this reliance might suffice. But, however unreasonable it may appear to be, foreign interests might well doubt that officials of the Justice Department would or could keep the information disclosed to them confidential. The Court concludes, then, that to some extent at least the policy supporting the attorney-client privilege would likely be compromised by denying the foreign principal the power to claim the privilege against the disclosure of certain documents to officials of the Justice Department. This is, therefore, a problem which Congress might well have considered when it drafted the statute. And if it did not, one which the Court must now resolve.

### III.

The Foreign Agents Registration Act does deal partially with the question of confidential communications between a foreign interest and its attorney in 22 U.S.C. § 613. That section exempts certain "agents of foreign principals" from the disclosure requirements of §§ 612 and 614 and thus from the recordkeeping and disclosure requirements of § 615. This is most obvious in § 613(g), which exempts:

[a]ny person qualified to practice law, insofar as he engages or agrees to engage in the legal representation of a disclosed foreign principal before any court of law or any agency of the Government of the United States . . . .

■ This provision obviously would protect confidential communications related to these activities. The problem with § 613(g) is that it does not include all the communications that have been traditionally protected by an attorney-client privilege. That privilege extends to all communications where legal advice of any kind is sought, whether made in contemplation of litigation or not. See 8 *Wigmore, Evidence* §§ 2294–99 (McNaughten rev. 1961). Therefore, this exemption, taken alone, would leave a substantial amount of confidential communications between a foreign principal and its agent-attorney subject to the recordkeeping and disclosure requirements of § 615.

The second place in which confidential communications between a client and his attorney are indirectly dealt with is in § 613(d). This provision exempts:

[a]ny person engaging or agreeing to engage only (1) in private and nonpolitical activities in furtherance of a bona fide trade or commerce of such foreign principal; or (2) in other activities not serving predominantly a foreign interest . . . .

■ Undoubtedly, most, if not all, of the legal work that an attorney would do for a foreign principal outside the courtroom or hearing room would fall within this exemption. But § 613(d) is, by its terms, limited to situations where the agent is engaged "only" in those particular activities. Of course, it would be absurd to interpret the word "only" here to mean that even if an agent engaged in other exempt activities the exemption would not apply. But it does appear reasonable to interpret the word to mean that if the agent engaged in other nonexempt activities the exemption would not apply. Therefore, if an attorney engages in any nonexempt activities in behalf of a foreign principal, he must include in his registration statement a description of these otherwise exempt legal activities as well. It may be presumed that instances of this will be relatively rare. Nevertheless, when the situation arises, as the Court presumes has occurred here, the question is directly posed whether an attorney-client privilege exists under § 615.

## IV.

Section 615 provides in relevant part as follows:

Every agent of a foreign principal registered under this subchapter shall keep and preserve while he is an agent of a foreign principal such books of account and other records with respect to all his activities, the disclosure of which is required under the provisions of this subchapter, in accordance with such business and accounting practices, as the Attorney General, having due regard for the national security and the public interest, may by regulation prescribe as necessary or appropriate for the enforcement of the provisions of this subchapter . . . . Until regulations are in effect under this section every agent of a foreign principal shall keep books of account and shall preserve all written records with respect to his activities. Such books and records shall be open at all reasonable times to the inspection of any official charged with the enforcement of this subchapter. . . .

Put in outline form, § 615 lists only two express conditions precedent to an agent's duty to make his books and records "open" to officials of the Justice Department:

(1) demand must be made at a reasonable time;

(2) demand must be made for books and records which must be kept under the Act.

This second precondition to disclosure is, in turn, dependent on only three other express preconditions:

(1) that the person be an agent of a foreign principal;

(2) that the records relate to the particulars of activities which the agent has had to disclose in §§ 612 and 614;

(3) that the records be "books of account and other records" which the Attorney General has by regulation prescribed as necessary or appropriate for the enforcement of the Act. The Attorney General has, by regulation, ordered that an agent, generally, keep all correspondence, memoranda, books, records, and documents "as are necessary properly to reflect the activities for which registration is required." 28 C.F.R. § 5.500(a) (1975).

Clearly, § 615 does not expressly dispose of the question of whether a claim of attorney-client privilege can be interposed to prevent disclosure to the government. C&B argues that the phrase "books of account and other records" indicates a congressional intent not to subject documents that would tend to disclose confidential client-attorney communications to the recordkeeping requirement of § 615 and thus not to subject them to the disclosure requirement either. But the phrase more fully quoted is "such books of account and other records . . . as the Attorney General . . . may . . . prescribe . . . ." In addition, Congress expressly made the phrase include "all written records with respect to [the agent's] activities" until the Attorney General should issue regulations. Put in this context, the phrase does not appear to be at all probative of an actual congressional intent to exclude confidential client-attorney communications from the requirements of § 615.

The Court has also looked at other sections of the Act to try to find some indication that Congress has addressed this problem. But the sole provisions that have any relevance at all, § 613(d) and (g), are not at all helpful. Because, as indicated above, these exemptions would allow a number of traditionally protected documents to be subject to the requirements of § 615, the Court finds it highly unlikely that the question of attorney-client privilege was a consideration in drafting them.

Finally, the Court has looked at the legislative history of the Act. On only two occasions does it appear that the problem of the possible disclosure under the Act of confidential client-attorney communications was discussed. *Hearings on S. 2136 Before The Senate Foreign Relations Comm.*, 88th Cong., 1st Sess. 13–14, 106–07 (1963). The Court has concluded that on neither occa-

sion did the Committee seriously consider the question.

Therefore, the Court must decide the issue by looking to the purpose of the statute and the function § 615 plays in achieving that purpose. See, e. g., *United States v. Klinger,* 199 F.2d 645 (2d Cir. 1952); *Cabell v. Markham,* 148 F.2d 737 (2d Cir. 1945).

### V.

It is important to note at the outset that there are really two questions to be resolved here. The first is whether records relating to confidential communications between a foreign principal and its agent-attorney are included in the "books of account and other records" that must be kept under the Act. If these records must be kept, then a second question arises—whether the phrase "open . . . to . . . inspection" is subject to an implied condition that disclosure of certain records to the Attorney General's delegates need not be made if a valid claim of attorney-client privilege is made. The Court does not think that either interpretation would do "undue violence" to the words of § 615 if the purpose of the Act favors it. See *Cabell v. Markham, supra* at 739–40.

The purpose of the statute, taken as a whole, is two-fold. First, of course, it is to enable the public, and more particularly the federal government, to learn what foreign interests are having a substantial effect on American life through agents operating in this country. That is evident from the wide definition of "agent of a foreign principal" in § 611(c) and (d) and in the relatively narrow exemptions of § 613. But it is also the purpose of the Act to accomplish this first objective without unnecessarily burdening agents. That is evident from the fact that such exemptions as § 613(d) and (g) exist at all. In fact, the Justice Department itself has recognized this in a booklet it has published on the Act, where it says:

Registration under the Act in no way places any limitation on the activities in which an agent of a foreign principal may engage and places no stigma on any person registering. [Dep't of Justice, The Foreign Agents Registration Act of 1938 at 1 (1973)]

Similarly, the function of § 615 is to insure that the public is in fact being accurately informed under the Act, but to do so in a way which does not unnecessarily intrude on the activities of an agent.

Applying this purpose to the question of whether an agent must keep records relating to confidential communications between a foreign principal and its attorney regarding legal matters, the Court finds that such records may well be relevant to determining whether the agent has fully informed the public about his activities. In addition, assuming that an attorney-client privilege can be claimed to prevent disclosure to officials of the Justice Department, if such records did not have to be kept, then the decision on whether the privilege applied to a particular document and on whether disclosure could be fashioned so as to give the Attorney General what he would need without compromising substantially a client's confidence would be largely in the hands of the attorney and his client. This would be intolerable. Finally, the Court finds that such a recordkeeping requirement would pose no substantial burden on the agent or on his ability to represent the principal. Therefore, the Court concludes that the phrase "books of account and other records" includes records which would tend to reveal confidential communications between a foreign principal and its agent-attorney concerning legal matters.

As to the question of whether the confidential records must *per se* be disclosed to officials of the Justice Department, the Court finds that this might well, as indicated in Part II above, limit substantially the ability of an agent-attorney to give legal aid to his client. In addition, the Court believes that in all or nearly all instances an impartial judicial officer would be able to disclose portions of a confidential document, or the substance of it, relevant to the Attorney General's needs under the Act without compromising the attorney-

client relationship.[3] The Court therefore concludes that an attorney who represents a foreign principal and who has registered as an agent under the Act may validly claim the attorney-client privilege to withhold from disclosure to delegates of the Attorney General documents or portions thereof which are required to be kept under the Act. Whether such documents are properly within the scope of the privilege, however, is for the Court to determine.

## VI.

Accordingly, it is this 23rd day of April, 1976,

ORDERED that the motion of the Attorney General for an injunction ordering Covington & Burling to allow the delegate of the Attorney General to inspect all remaining undisclosed books and records regarding its representation of the Republic of Guinea be, and the same hereby is, denied, since Covington & Burling may validly assert the attorney-client privilege with regard to these documents; and it is

FURTHER ORDERED that the motion of Covington & Burling for summary judgment be, and the same hereby is, granted as to those documents which the Court finds to be properly within the scope of the attorney-client privilege; and pursuant to this order it is

FURTHER ORDERED that, within ten (10) days of the date of this order, Covington & Burling turn over to the Court for *in camera* inspection all of the documents which the Attorney General seeks to inspect and which Covington & Burling seeks to withhold on the claim of attorney-client privilege, so that the Court may determine whether such documents or portions thereof are properly within the scope of the privilege.

---

**3.** The Court can at least hypothecate a situation where these two interests would be locked in unresolvable conflict. *See Attorney General v. Irish Northern Aid Committee,* 346 F.Supp. 1384 (S.D.N.Y.), *aff'd mem.,* 465 F.2d 1405 (2d Cir.), *cert. denied,* 409 U.S. 1080, 93 S.Ct. 679, 34 L.Ed.2d 669 (1972). But that question need not be decided now.