ATTORNEY GENERAL OF the UNITED
STATES of America, Plaintiff,

v.

COVINGTON & BURLING, Defendant.

Civ. A. No. 75–1238.

United States District Court,
District of Columbia.

April 20, 1977.

Brian Ahearn and Joel Lisker, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Erwin N. Griswold, Washington, D.C., for defendant.

## MEMORANDUM OPINION

SIRICA, District Judge.

This is an action under the Foreign Agents Registration Act, 22 U.S.C. §§ 611–21 (1970). In it, the Registration Unit of the Justice Department, which is the authorized delegate of the Attorney General under the Act, has sought to obtain access to certain documents held by Covington & Burling ("C&B"), a law firm.

The Court has issued one previous opinion in this case, *Attorney General v. Covington & Burling*, 411 F.Supp. 371 (D.D.C. 1976). There it held that implicit in the Act is an attorney-client privilege which allows an attorney to withhold documents sought by the Registration Unit under 22 U.S.C. § 615. The Court accordingly ordered C&B to submit the documents withheld for judicial review to determine if the privilege was properly claimed for each one.

C&B subsequently gave to the Court the following:

(1) under seal, the documents withheld from the government on the ground of attorney-client privilege;

(2) under seal, a justification for claiming the privilege with respect to each document;

(3) a memorandum stating specifically what C&B's view of the scope of the privilege is.

After studying the memorandum and the individual justifications, the Court became concerned that C&B might have been claiming more than it was entitled to claim under the privilege as traditionally defined. It therefore asked the parties to submit additional memoranda on this point. This they have now done.

### I

■ In its memorandum, the Registration Unit has suggested a course of action which is substantially different from that envisioned by the Court and which therefore must be addressed preliminarily. In order to take advantage of the unit's expertise under the Foreign Agents Registration Act, and in order to save the Court the time needed to review each individual document and determine whether attorney-client privilege applies in each case, the unit advised the Court simply to turn the documents directly over to it and subject those persons who would inspect the documents to a protective order forbidding further disclosure. Then presumably, if these persons should find certain information which they feel should, or must, under the Act, be disclosed further, it would ask the Court for a specific determination of whether and to what extent the information might be privileged.

The Court would very much like to be able to do this. But for two reasons, it has

found that proceeding in this manner would not be wise.

First, as C&B has argued, there is some question whether a protective order such as the Registration Unit has suggested would alleviate the fears of a country, like the Republic of Guinea, that is unfamiliar with our legal processes.

Second, the Registration Unit may be statutorily obligated to disclose all documents and information it has obtained under the Act to others upon request; if that is so, then a protective order would obviously be inappropriate. As the Foreign Agents Registration Act is now written, it is possible that Congress intended all documents, once submitted to the unit under 22 U.S.C. § 615, regardless of any privilege that might have been claimed, to be subject to disclosure under the Freedom of Information Act, 5 U.S.C. § 552 (1970), *as amended*, (Supp. V, 1975); such documents could conceivably be considered "records" under § 552(a)(3), and might not fall within one of the specific exemptions from disclosure of § 552(b).

In addition, it is possible that Congress intended that all information, once obtained by the Registration Unit, be disclosed to an executive or legislative body upon request. Under 22 U.S.C. § 616(c), the Attorney General is specifically:

> authorized to furnish to departments and agencies in the executive branch and committees of Congress such information obtained by him in the administration of this subchapter . . . as may be appropriate in the light of the purposes of this subchapter.

The mere statement of these issues shows that this is not a very good occasion for deciding them; they are very tangential to the main controversy of this suit, so much so that C&B, at least, may not have standing to address them. Since, on the other hand, the Court can avoid these problems by keeping the documents and deciding itself whether the privilege is properly claimed for each one, and since the Court believes that it is competent to safeguard adequately the responsibilities of the Attorney General under the Act, the suggestion of the Registration Unit has had to be rejected.

## II

 The Court, therefore, has proceeded, to study each document and determine what information in it is protected by the attorney-client privilege. In doing so, however, the Court has kept in mind the peculiar way in which the question of privilege has arisen in this case. The issue did not arise in the traditional kind of adversary proceeding or investigation directed against the client. There the privilege has been traditionally recognized. Rather, it arose in the course of an investigation into the activities of the attorney—an investigation specifically authorized by statute, and for which no express provision was made for an attorney-client privilege. Given this unusual setting, especially the lack of specific legislative guidance, it is imperative that the privilege recognized be narrowly limited within its traditional confines.

### A.

 The Court has inquired, first, into whether C&B has pleaded all the elements necessary to granting the privilege. The first major problem that arose in this area was that of identifying the particular communications that the privilege protects. It is clear, of course, that confidential communications from the client to the attorney or the attorney's agents are privileged. VIII *Wigmore, Evidence* §§ 2291, 2301 (McNaughton rev. 1961); *McCormick, Evidence* § 89 (1972). But, particularly in its justifications for claiming the privilege, C&B has suggested that the privilege applies with equal force to other communications as well—for example, to those from the attorney to another in furtherance of the rendition of legal services to the client and to those from the attorney to the client. The general rule is, however, that the privilege only protects these other communications to the extent that disclosure would tend to reveal a confidential communication

from the client.[1] See *McCormick, Evidence* § 89 (1972). Therefore, where it is clear from examining a document that disclosure of it would not tend to reveal a confidence of Guinea specifically, or where C&B has failed to allege the contrary, the Court has not upheld the claim of privilege.

The second problem that arose on the scope of the privilege was whether a particular communication came from Guinea. C&B has labelled a number of persons "agents" of Guinea, and has argued that a confidential communication from one of them was, in effect, a communication from Guinea and therefore privileged. The most important of these agents appears to have been Price Waterhouse, an accounting firm that C&B used as a consultant in preparing a negotiating position for Guinea on the taxing of CBG, the corporation that was developing Guinea's bauxite resources.

■ But to say that a person is an "agent" of the client does not necessarily mean that he is the equivalent of the client for purposes of the attorney-client privilege. For example, where a corporation is the client, the privilege only extends to communications from those agents who are in the "control group," see *City of Philadelphia v. Westinghouse Electric Corp.*, 210 F.Supp. 483 (E.D.Pa.), *mandamus and prohibition denied sub nom. General Electric Co. v. Kirkpatrick*, 312 F.2d 742 (3d Cir. 1962), *cert. denied*, 372 U.S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969 (1973), or perhaps also from those agent-employees directed to communicate with the attorney by their superiors concerning matters within the scope of their employment. See *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir. 1970), *aff'd mem. by equally divided court*, 400 U.S. 955, 91 S.Ct. 351, 27 L.Ed.2d 263, *rehearing denied*, 401 U.S. 950, 91 S.Ct. 917, 28 L.Ed.2d 234 (1971). It is true that the law on this question is unsettled. It is also true that, where a country is the client a somewhat broader rule might apply. Nevertheless, C&B has not suggested—and this Court does not see how it could suggest—that the privilege should be extended with full force to communications from a person whose function is simply to aid the attorney in rendering legal assistance. After reviewing the documents and the justifications, the Court has concluded that this is precisely the function that Price Waterhouse and other similar agents performed. Therefore, the Court has granted the privilege to communications from the these persons only to the extent that disclosure would tend to reveal a confidence from the actual client to one of them or to the attorney.

■ The final important problem with respect to the scope of the privilege that the Court has had to face is whether a particular document tends to reveal a communication made to obtain legal assistance. C&B has argued that the test of a client's legal purpose is not whether the work could have been performed by a non-lawyer, or whether the attorney at times took non-legal considerations into account in rendering assistance. On both counts, C&B is correct. Rather, if the privilege is to be true to its purpose, the ultimate test must be whether protection of the communication would, in any significant way, benefit the administration of justice.

■ C&B has represented Guinea in a number of matters that were clearly legal in nature. But in the course of these activities, the firm has done a number of things which are only tangentially related to them or their legal purpose. For example, C&B dealt extensively with a bauxite consultant in order to discover the price other bauxite producers were charging. This aided in the negotiation of supplementary bauxite contracts. In addition, it contacted various possible bauxite purchasers, and also a truck manufacturer, in order to initiate contract negotiations between them and Guin-

---

1. A special instance of this occurs in a communication from the attorney to the client. Such a communication is privileged not only if disclosure would tend to reveal a prior confidence of the client, but also if it would tend to reveal a subsequent communication—an admission by adoption.

ea. Though the Court can certainly understand why Guinea might wish to keep these matters confidential, it cannot see how the administration of justice would be, in any substantial way, advanced by recognizing a privilege for communications of Guinea relating to these matters. Therefore, in these instances, and in others like them, the Court has denied the privilege.

### B.

 But it has not been sufficient for C&B simply to allege with respect to a particular document that each element of the privilege was, and continues to be, present. The attorney also has the burden of showing with sufficient certainty that the elements do, in fact, exist. This has been the Court's second major inquiry. It has created some difficult problems with respect to each element of the privilege, but particularly with respect to the elements of initial and continuing confidentiality.

▆ The problem has arisen because oftentimes the most C&B in good faith could claim was something such as this: "We cannot determine that this [document] does not disclose a confidential communication from [Guinea] to the firm."[2] The Court understands that Guinea may not have understood how the American legal system works, and for that reason has not cooperated fully with C&B. Because of this, the Court has been generally willing to give C&B the benefit of any doubts. But where the information withheld was of a kind likely to have been disclosed to third parties in the future, or where C&B clearly could have remedied its uncertainty by obtaining information from other sources, or where the communication may be of interest to the Attorney General in fulfilling his obligations under the Foreign Agents Registration Act, the Court has been unable to accept such statements. In those instances, then, the privilege has been denied.

2. At one point this lack of certainty reached ironic proportions. To justify non-disclosure of one document, C&B stated that "[w]e cannot

### III

Following these standards, the Court has studied each document and made a determination on whether the privilege applies.

The Court has also found that none of the documents held privileged would, if disclosed, add measurably to the Registration Unit's knowledge of the activities of C&B in behalf of Guinea.

say that no such facts are not now confidential."