**NORTH CAROLINA ELECTRIC MEM-
BERSHIP CORPORATION, et
al., Plaintiffs,**

v.

**CAROLINA POWER & LIGHT
COMPANY, Defendant.**

No. C–77–396–G.

United States District Court,
M.D. North Carolina,
Greensboro Division.

April 25, 1986.

See also, D.C., 108 F.R.D. 283.

Thomas J. Bolch, Raleigh, N.C., Edward L. Murrelle and Lindsay R. Davis, Jr., Greensboro, N.C., Wallace E. Brand and Sean T. Beeny, Washington, D.C., for plaintiffs.

Richmond G. Bernhardt, Jr. and Peter J. Covington, Greensboro, N.C., Linda Markus Daniels, Research Triangle Park, N.C., H. Ray Starling, Richard E. Jones, and Charles D. Barham, Jr., Raleigh, N.C., Ray S. Bolze and Kenneth E. Krosin, Toni K. Allen and William Warfield Ross, Washington, D.C., for defendant.

## ORDER

PAUL TREVOR SHARP, United States Magistrate.

Before the Court is plaintiffs' motion to compel production of documents withheld from discovery by defendant Carolina Power & Light Company (CP & L) under claims of attorney-client privilege or work-product protection. As a part of the motion, plaintiffs requested an in camera review of the documents in question. The Court heard the oral argument of counsel on February 13, 1986. Shortly thereafter, at the Court's direction, CP & L submitted over 200 documents for in camera review by the Court.[1]

With the documents, CP & L filed an affidavit of counsel setting forth a description of procedures used by CP & L management and employees in communicating with in-house and outside counsel. The "procedure" document is not under seal. Also, to each of the more than 200 sealed documents, CP & L attached a short statement of the nature of the communication, the identity (as counsel, corporate officer or employee, or otherwise) of the author and recipients of the document, and the nature of the legal issue involved in the communication.

---

1. The 200 plus documents submitted to the Court are not the full total of documents claimed by CP & L to be protected by the attorney-client privilege or work-product protection in this litigation. Rather, these 200 are said to be representative of categories of documents withheld by CP & L. Plaintiffs and defendant jointly agreed to the group of documents to be reviewed by the Court. CP & L voluntarily produced to plaintiffs a number of documents from this selected group before submitting the remainder to the Court for examination.

## A. The Federal Common Law Attorney-Client Privilege

The task before the Court is to apply the federal common law attorney-client privilege[2] to a large volume of documents.[3] This undertaking is a difficult one. The privilege is attended by special problems in the context of a corporate proponent such as CP & L. Moreover, the documents at issue contain a considerable amount of technical data, the significance of which is not always apparent. Nonetheless, the Court will proceed in the customary fashion—to first declare the law and then to apply the law to the facts.

The attorney-client privilege recognized in the federal common law has been defined as follows:

The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357 (D.Mass.1950); *see also, Duplan Corporation v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1160 (D.S.C. 1974); 4 *Moore's Federal Practice*, § 20.-60[2]. The purpose of the privilege, as recently described by the Supreme Court,

is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).

The attorney-client privilege protects the substance of confidential communications from client to attorney. Although the protection afforded to such communications promotes public interests, the privilege nonetheless is inconsistent with the general duty to disclose and therefore impedes investigation of the truth. *See, NLRB v. Harvey*, 349 F.2d 900, 907 (4th Cir.1965). Accordingly, the privilege must be strictly construed. *See, In re Grand Jury Proceedings (John Doe)*, 727 F.2d 1352, 1356 (4th Cir.1984); *United States v. Jones*, 696 F.2d 1069 (4th Cir.1982); *United States v. (Under Seal)*, 748 F.2d 871 (4th Cir.1984), *cert. granted sub nom, United States v. Doe*, 469 U.S. 1188, 105 S.Ct. 954, 83 L.Ed.2d 962 (1985), *appeal after remand*, 757 F.2d 600, *vacated on other grounds*, — U.S. ——, 105 S.Ct. 1861, 85 L.Ed.2d 155, *on remand*, 763 F.2d 662 (4th Cir. 1985). Further, the burden of persuasion on each of the elements of the privilege is clearly upon the proponent. As noted in *United States v. (Under Seal)*, "in practical terms, this burden requires the proponent to explain, through ex parte submissions if necessary to maintain confidentiality, the significance or meaning of an otherwise cryptic document." 748 F.2d at 876.

It is well settled that a corporation may be a "client" with standing to assert the privilege. In *Upjohn Co. v. United States*, the Supreme Court applied the attorney-

---

2. *See*, Federal Rule of Evidence 501 ("the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.").

3. One or two of the documents involve application of work-product protection. However, these are few in number and present no unusual problems. The in camera review by the Court has included consideration of defendant's work-product claims, but no discussion of work-product principles is necessitated herein.

client privilege in the corporate setting. In that case, the Upjohn Co. had conducted an internal investigation of questionable payments by corporate employees to foreign government officials. The Upjohn Chairman of the Board sent a letter (drafted by counsel) to corporate managers informing them of the investigation being conducted by in-house counsel and instructing them to respond to counsel's questionnaires. The letter warned the employees to treat the information as "highly confidential." The Supreme Court extended the cloak of the attorney-client privilege to protect the questionnaires completed by employees of the corporation. The Court specifically rejected a "control group" test which would have limited the privilege to communications to counsel from members of the corporation's "control group"—those empowered by high office to control or take a substantial part in a decision which the corporation might make in response to legal advice. *Cf. City of Philadelphia v. Westinghouse Electric Corp.*, 210 F.Supp. 483 (E.D.Pa.1962). The Supreme Court emphasized that the purpose of the privilege is to encourage full discussion between attorneys and clients. It is important for corporations not only to be able to act on advice but also to be able to communicate information held at every corporate level to counsel so that counsel can render informed advice. The Court noted that corporations often seek advice on compliance with the law, and the "control group" test would be too uncertain to permit predictability as to which communications would be protected.

Several other principles which attend the privilege should be noted. In order for the privilege to apply, the attorney receiving a communication must be acting as an attorney and not simply as a business advisor. *See, In re Sealed Case*, 737 F.2d 94 (D.C. Cir.1984) (in-house counsel who also had duties outside legal sphere bears the burden to show that advice is given in a legal capacity); *Duplan Corporation v. Deering Milliken, Inc., supra* (the communication must be given incident to a request for, or the rendition of, legal advice). Indeed, the

client's confidential communication must be for the *primary* purpose of soliciting legal, rather than business, advice. *See, United States v. Huberts*, 637 F.2d 630 (9th Cir. 1980), *cert. denied*, 451 U.S. 975, 101 S.Ct. 2058, 68 L.Ed.2d 356 (1981) (overseeing the sale of equipment is not a legal service); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C.Cir.1980); *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 429 (E.D.Pa.1981) (discussions of a financial or business nature are not privileged if not for the purpose of eliciting the attorney's advice as to the legal overtones of various strategies); *Commonwealth of Puerto Rico v. SS Zoe Colocotroni*, 61 F.R.D. 653 (D.Puerto Rico 1974); *SEC v. Gulf and Western Industries, Inc.*, 518 F.Supp. 675 (D.D.C.1981). Corporate documents prepared for simultaneous review by legal and nonlegal personnel are often held to be not privileged because they are not shown to be communications made for the primary purpose of seeking legal advice. *See, SCM Corp. v. Xerox*, 70 F.R.D. 508 (D.Conn.1976), *appeal dismissed*, 534 F.2d 1031 (2nd Cir. 1976); *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1 (N.D.Ill.1980).

Communications *from* attorney *to* client may, of course, fall within the privilege. However, such communications are protected by privilege only if they tend to reveal confidential client communications. *F.T.C. v. Shaffner*, 626 F.2d 32 (7th Cir.1980); *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21 (N.D.Ill.1980); *Mead Data Central, Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242 (D.C.Cir.1977); *contra, In re LTV Securities Litigation*, 89 F.R.D. 595 (N.D.Texas 1981), and *Jack Winter, Inc. v. Koratron Co., Inc.*, 54 F.R.D. 44 (N.D.Cal. 1971). In *United States v. (Under Seal)*, the Fourth Circuit wrote:

Because the privilege protects the substance of communications, it may also be extended to protect communications by the lawyer to his client, agents, or superiors or to other lawyers in the case of joint representation, *if those communi-*

*cations reveal client communications.* [Emphasis added.]

748 F.2d at 874.

In considering whether a proponent of the privilege is entitled to protection, the Court must place the burden of proof squarely upon the party asserting privilege. Accordingly, the proponent must provide the court with enough information to enable the court to determine privilege, and the proponent must show by affidavit that precise facts exist to support the claim of privilege. *See, United States v. (Under Seal), supra; F.T.C. v. Shaffner, supra; Barr Marine Products Co., Inc. v. Borg-Warner Corp.,* 84 F.R.D. 631 (E.D.Pa. 1979); *SEC v. Gulf and Western Industries, Inc., supra* at 685; *Coastal Corp. v. Duncan,* 86 F.R.D. 514 (D.Del.1980); and *North American Mortgage Investors v. First Wisconsin National Bank of Milwaukee,* 69 F.R.D. 9 (E.D.Wis.1975). A failure of proof as to any element causes the claim of privilege to fail.

**B. The Results of In Camera Review**

With these principles in mind, the Court must determine whether the documents submitted for in camera review are protected by the attorney-client privilege. Upon examination, the Court finds that the documents submitted by CP & L should be placed in eight categories, as set forth below. Of the eight categories, only categories II, III, VII, and VIII contain privileged documents. The remainder are documents for which CP & L has not carried its burden to show privilege.

### CATEGORY I

Memoranda or letters from management which contain no confidential communications or do not clearly request legal advice or services:

| | | | | | |
|---|---|---|---|---|---|
| C012855 | C105760 | C201095 | C208343 | C300384 | C300385 |
| C803443 | C803442. | C300599 | C300617 | C300868 | C300868A |
| C300894 | C300911 | C800195 | C300915 | C300945 | C800373A |
| C301069 | C301740 | C301946 | C303475 | C505893 | C303476 |
| C304966 | C506068 | C505977 | C800236 | C505973 | C506145 |
| C507811 | C800194 | C507878 | C016587 | C016622 | C114814 |
| C208149 | C208180 | C208188 | C208279 | C208302 | C208317 |
| C208487 | C208488 | C208527 | C208530 | C300301 | C300452 |
| C800196 | C801132 | C800517 | C800555 | C800875 | C800303A |
| C800907 | C803439 | C801137 | C801145 | C801529 | C800308M |
| C801528 | C801748 | C803116 | C803117 | C801828 | C800517A |

### CATEGORY II

Legal advice from in-house counsel which reveals confidential client communications:

| | | | | | |
|---|---|---|---|---|---|
| C300913 | C800225 | C300914 | C801470 | C700165 | C300600 |
| C500250 | C010614 | C007350 | C000096 | C000015 | C300926A |
| C105527 | C208332 | C208266 | C208853 | C700302 | |

### CATEGORY III

Communications between in-house and outside counsel which reveal confidential client communications and contain legal advice:

C208499

### CATEGORY IV

Communications between in-house and outside counsel which do not reveal confidential client communications or which do not contain legal advice:

| | | | | | |
|---|---|---|---|---|---|
| C000086 | C503487 | C000094 | C503364C | C000086A | C503490C |
| C104239 | C208158 | C208421 | C001705A | C304934A | |

## CATEGORY V

Memoranda from outside counsel which reflect no confidential client communications or do not contain legal advice:

| | | | | | |
|---|---|---|---|---|---|
| C000269 | C302547 | C105676 | C208172 | C208648 | C208365 |

## CATEGORY VI

Memoranda or letters from in-house counsel which do not reveal confidential communications and/or do not contain legal advice:

| | | | | | |
|---|---|---|---|---|---|
| C301044 | C000087 | C010691 | C012854 | C105567 | C803270A |
| C300867 | C000917 | C301741 | C301758 | C302858 | C500250A |
| C302948 | C304655 | C305043 | C400987 | C010856 | C800206A |
| C800214 | C800244 | C801736 | C801848 | C802022 | C800199A |
| C802245 | C301058 | C208177 | C208179 | C208519 | C301758A |
| C208670 | C208218 | C208221 | C208693 | C300479 | C300920A |
| C208222 | C208285 | C208286 | C208492 | C300496 | C300927A |
| C208689 | C300268 | C300440 | C300476 | C300499 | C300912A |
| C301063 | C008627A | C700250B & A | | | |

## CATEGORY VII

Legal advice or memoranda from outside counsel which reveal confidential client comments or where inference is clear as to the nature of confidential communications:

| | | | | | |
|---|---|---|---|---|---|
| C700280 | C700281B | C203226B | C304706B | C304946D | C400909D |
| C700281 | C700281C | | | | |

## CATEGORY VIII

Communications from management to in-house counsel which contain confidential communications and request legal advice:

| | | | | | |
|---|---|---|---|---|---|
| C801471 | C800578 | C800561 | C800372 | C008345B | C300892B |
| C117714 | C506048 | C507775 | C507774 | C012849A | C300962A |
| C301756 | C301743 | C300962 | C012849 | C400987A | C401175A |

---

### C. Application of the Privilege to Certain Documents

■ Several documents, or types of documents, merit specific discussion. CP & L has presented a large number of documents drafted by management which are alleged to contain not only confidential communications but also an "implied request for legal advice." The Court has determined that most of these documents are not privileged. [See, Category I.] Several factors contribute to this determination. While a single factor may not be controlling in every case on the issue of privilege, the combination of several factors with respect to a particular document is significant. First, many of the documents are entitled simply "Memorandum," with no notation of confidentiality, and are addressed to a number of individuals, only one or more of whom were in-house counsel for defendant. [See, for example, C300911.] Other documents are addressed to company employees who served as house counsel but also held important management positions.

A second factor is the subject matter of the documents. Many documents are "updates" on ongoing business developments, such as contacts with various co-op members, or discussions of cost information, technical data, contract negotiations, and delivery point problems. Third, the documents do not contain specific requests for legal advice or services, and CP & L has not supplied adequate information which might tie these documents to specific legal

problems. *Cf., Upjohn Co. v. United States, supra.* Defendant has not met its burden as to these documents by merely suggesting an "implied request for legal advice." [4]

■ A related problem concerns communications from counsel wherein counsel appears to give business rather than legal advice. [*See,* for example, C305043, Category VI.] Several of CP & L's house counsel also performed duties outside the legal department. Defendant thus bore a burden to show that advice was given in a legal, rather than business, capacity. Business advice, such as financial advice or discussion concerning business negotiations, is not privileged. *See, J.P. Foley & Co., Inc. v. Vanderbilt,* 65 F.R.D. 523 (S.D. N.Y.1974); *In re Shapiro,* 381 F.Supp. 21 (N.D.Ill.1974); *Attorney General of the United States v. Covington and Burling,* 430 F.Supp. 1117 (D.D.C.1977).

A number of the documents which the Court has found to be not privileged concern EPIC, a proposed power generation and transmission system which was, at one time, considered by approximately seventy cities and 36 REA cooperatives in North Carolina. Although some CP & L documents concerning EPIC clearly concern legal issues and have been found to be privileged, most of the "EPIC documents" refer only to defendant's activities in coordinating opposition to the formation of EPIC. Although these "lobbying" efforts seem to have been coordinated by the legal department, the resultant communications do not refer to legal problems but instead are summaries of various town meetings or reports on the progress of the EPIC project. Such communications from counsel to management are not legal advice. [*See,* for example, C208221, Category VI.]

Nor are updates on lobbying activities requests for legal advice. [*See,* for example, C208317, Category I.] [5]

■ A third area for specific discussion relates to communications from in-house counsel to management, or between in-house and outside counsel, which do not reveal confidential client communications. Many of these documents are cover letters which do not include facts which could reveal confidential client communications. [*See,* for example, C304655, Category VI; C000086, Category IV.] Defendant claims privilege for a number of drafts of letters, but defendant does not attest that the drafts were not eventually sent. [*See,* for example, C300867 and C800199A, Category VI.] Preliminary drafts of letters or documents which are to be published to third parties lack confidentiality. *United States v. (Under Seal), supra; Duplan Corporation v. Deering Milliken, Inc.,* 397 F.Supp. at 1168. Billing records and attorney hourly statements which do not reveal client communications are not privileged. *In re LTV Securities Litigation, supra; Schachar v. American Academy of Ophthalmology, Inc.,* 106 F.R.D. 187, 192 (N.D.Ill. 1985); *Stastny v. Southern Bell Telephone & Telegraph Co.,* 77 F.R.D. 662 (W.D.N.C.1978). Legal memoranda which summarize caselaw but contain no factual application to the client do not contain confidential client information and are thus not privileged. *See, F.T.C. v. Shaffner, supra.* [*See,* for example, C500250A, Category VI.]

A final area for discussion concerns communications among CP & L, certain joint venturers, and counsel. CP & L was, at some time in the past, involved in a particular joint venture known as CARVA.[6] As a

---

**4.** When "updates" clearly identified a specific legal problem connected to confidential information, the Court found the privilege to apply. [*See,* for example, C800578, Category VIII.]

**5.** A number of the EPIC documents are directed to, or are from, Robin L. Hinson. Mr. Hinson is identified by defendants as both management and in-house counsel. [*See,* C208221, Category VI; and C208317, Category I.]

**6.** Defendant describes CARVA as an organization formed by a contract between defendant, Duke Power Company, Virginia Electric Power Company (VEPCO), and South Carolina Electric and Gas Company (SCE & G). According to defendant, these companies were bound together in a contractual joint effort to enhance the reliability and economy of their electrical systems by pooling energy reserves and utilizing joint planning for construction of facilities.

general rule, communications shared with a third party, such as a separate corporation, are not protected by the attorney-client privilege because the requisite confidentiality is breached. However, a narrow exception covers communications between joint venturers where a common interest is the subject of shared communications made for the purpose of securing legal advice. *See, SCM Corp. v. Xerox, supra; Burlington Industries, Inc. v. Exxon Corp.*, 65 F.R.D. 26 (D.Md.1974); *Sneider v. Kimberly-Clark Corp., supra.* To sustain a finding of confidentiality, the joint venturers must have an identical legal interest. *Duplan Corporation v. Deering Milliken, Inc.*, 397 F.Supp. at 1172.

■ Defendant has not met the test for privilege with respect to most of the CAR-VA documents. A number of the CARVA communications are simply transmittal letters. [*See*, for example C000086, Category IV.] Others contain economic and business data rather than legal advice. [*See*, for example, C503487, Category IV.] And certain legal memoranda concern disputes *between* group members and thus could not have been prepared in response to legal problems in which the joint venturers held identical interests. [*See*, for example, C105676, Category V.]

### D. Conclusion

Defendant has carried its burden of making out the attorney-client privilege only with respect to the fifty documents listed in Categories II, III, VII, and VIII, above. The Clerk will return all of the in camera documents to defendant, at the time of service of this order. Plaintiffs' motion to compel is GRANTED as to all other documents submitted to the Court (Categories I, IV, V, and VI), and CP & L shall produce these documents to plaintiffs within ten (10) days of the date of this order.

Within thirty (30) days of this order, defendant shall produce to plaintiffs all other documents withheld from discovery on claims of privilege which are inadequate under principles set forth in this order. As to any documents which defendant contin-

ues to claim privilege, defendant shall, within the same thirty-day period submit the documents and explanatory affidavits to the Court for further in camera review.

The Court will review defendant's further submission of documents to determine privilege and to evaluate compliance by defendant with Rule 11, Fed.R.Civ.P.