**REPUBLICAN PARTY OF NORTH CAROLINA, et al., Plaintiffs,**

**v.**

**James G. MARTIN, Governor of North Carolina, et al., Defendants.**

**and**

**North Carolina Association of Black Lawyers, Defendant–Intervenor.**

**No. 88–263–CIV–5–F.**

United States District Court, E.D. North Carolina, Raleigh Division.

Jan. 20, 1991.

Charles Allen Foster, Patton, Boggs & Blow, Greensboro, N.C., for plaintiffs.

Leslie J. Winner, Ferguson, Stein, Watt, Wallas & Adkins, James E. Ferguson, II, Charlotte, N.C., James M. Wallace, Jr., Office of the Atty. Gen., and Arch T. Allen, III, Moore & Van Allen, Raleigh, N.C., for defendants.

## ORDER

JAMES C. FOX, Chief Judge.

### NATURE OF THE CASE

Plaintiffs in this action challenge the constitutionality of North Carolina's system of electing Superior Court judges. James G. Martin, Governor of North Carolina ("Governor Martin"), is a defendant in his official capacity. On March 14, 1990, the North Carolina Association of Black Lawyers ("NCABL"), defendant-intervenor in this case, applied to the court for a subpoena duces tecum commanding Governor Martin's appearance at a deposition and requiring the Governor to produce:

(a) All documents related to the General Assembly's enactment, or failure to enact, any legislation or proposed legislation to modify the method of electing Superior Court Judges in North Carolina[; and]

(b) All documents which relate to plaintiffs' contention that the current method of electing Superior Court Judges in North Carolina discriminates against the Republican Party and Republican voters.

Governor Martin moved to quash the subpoena duces tecum and for a protective order that his deposition not be had, on the grounds that the subpoena commanded production of documents protected by executive privilege, by the work product doctrine, and by the attorney-client privilege, and because of the unnecessary intrusion on the office of Governor to respond. By order dated November 7, 1990, (the "Order") this court ordered that the deposition be held subject to specified limitations, and that Governor Martin supplement his Motion to Quash by: (a) marking all the documents subpoenaed by the NCABL for identification and delivering the same, under seal, to the Clerk of Court for an in camera review by the court; (b) submitting an inventory of all documents by identification number; and (c) submitting a brief disclosing as to each document the applicable privilege(s) and the rationale for the privilege(s).

Governor Martin has submitted a Memorandum in Response to the Order ("Response Memorandum") supplementing his Motion to Quash, and said motion is now ripe for ruling.

### DISCUSSION

Attached to Governor Martin's Response Memorandum as Exhibit A is a 32 page list of all 369 (by the court's count) subpoenaed documents. Said Exhibit contains, as to each document, a brief indication of the privilege asserted and the reason therefor, the document's "Bates" number, and a brief description of the contents of the

document. The index to Exhibit A classifies each document as either "W" ("waiver of privilege"), "ACP" ("attorney client privilege"), "WP" ("work product"), "R" ("not relevant"), "NP" ("no privilege asserted"), and "Public record." In addition, the classifications of certain documents are followed by a "?" ("asserted privilege is based [o]n the limited information currently available"). No reference is made to executive privilege, because Governor Martin has now elected to waive the same. *See* Response Memorandum at 4.

The court has carefully reviewed each document identified in Exhibit A *individually,* and finds Governor Martin's *description* of, and *numbering* of, each document to be essentially fair and accurate and has attached a copy of Appendix A to the instant order in order to use the same as a reference.[1][2] However, for the reasons expressed infra, the court believes that several of the documents for which a privilege is claimed are in fact not privileged, and the court thus declines to adopt the classifications asserted in Exhibit A, *except as specifically noted.*

■ The court will first briefly summarize the applicable law as to evidentiary relevance, the attorney-client privilege, and the work product doctrine[3], before ruling on Governor Martin's Motion to Quash as to each document.

1. *Documents for Which no Protection is Claimed*

There are 177 documents for which Governor Martin has either not claimed a privilege, or for which he has waived any privilege. The court hereby ORDERS Governor Martin to comply with the NCABL's subpoena duces tecum as to the three documents listed *only*[4] as "NP," the 151 documents listed *only* as "W," and the 23 documents listed *only* as "Public record," within ten (10) days of the date of this order.

2. *Relevance*

There are 48 documents which Governor Martin claims are not discoverable for the *sole* reason (*see* fn. 4) that they are not "relevant" to the subject matter of the instant action. Rule 26(b)(1), Fed.R.Civ.P., provides, in pertinent part, that "[p]arties may obtain discovery regarding any matter, not privileged, which is *relevant* to the subject matter involved in the pending action...." (Emphasis added.) This court has previously commented on this "relevancy" requirement as follows:

> Rules 26 through 37 of the Federal Rules have been interpreted liberally to allow maximum discovery. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). It is clear that what is relevant in discovery is far different from what is relevant at trial, in that the concept at the discovery state is much

---

1. The court has found only two minor typographical errors with the "Bates" numbering of the documents. On page three of Appendix A, the first document should be numbered AG00101–104, not AG00104*A;* and on page 11, AG01293–1299 should read AG01293–129*8.* The court has corrected these errors on the copy of Appendix A attached to the instant order.

 The court also notes that a handful of documents are duplicates because they are listed in more than one file. *See, e.g.,* AG00105–107 and DG00467–468, and DG00594–595 and DG00506–508.

2. The court recognizes that some courts have used the expedited approach of ruling on the discoverability of documents based only on a review of a resume of the contents of the documents, supplemented by "spot checks" of a few documents. *See, e.g., In re Richardson–Merrell, Inc.,* 97 F.R.D. 481 (S.D.Ohio 1983).

The court wishes to emphasize that it has not based its rulings on the descriptions found in Appendix A, but instead has reviewed each document individually.

3. The work product doctrine (or "rule") is also sometimes referred to as the work product privilege. This terminology is not, technically speaking, correct, in that the defense of work product is not a privilege from discovery, but is only a *qualified immunity* from the same, as will be further discussed infra. *See, e.g., International Tel. & Tel. Corp. v. United Tel. Co.,* 60 F.R.D. 177 (M.D.Fla.1973); *Kirkland v. Morton Salt Co.,* 46 F.R.D. 28 (N.D.Ga.1968).

4. Several documents are classified in alternate categories, e.g. "W;R" or WP;ACP." The court will discuss this category of documents separately, infra.

broader. *See* C. Wright, *Law of Federal Courts* 403 (1976). Discovery is designed to define and clarify the issues. If requested materials are reasonably calculated to lead to discovery of admissible evidence, the discovery request is relevant. F.R.Civ.P. 26(b)(1); *Weddington v. Consolidated Rail Corp.*, 101 F.R.D. 71, 73 (N.D.Ind.1984)[;] *Alliance to End Repression v. Rockford*, 75 F.R.D. 441, 444 (N.D.Ill.1977). Therefore, discovery requests should be complied with if there is a reasonable possibility that the information sought may be relevant to the subject matter of the action. *Sherman Park Community Association v. Wauwatosa Realty*, 486 F.Supp. 838, 845 (E.D.Wis.1980).

*Spell v. McDaniel*, 591 F.Supp. 1090, 1114 (E.D.N.C.1984).

But, while "the requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms[,] [n]o one would suggest that discovery should be allowed of information that has no conceivable bearing on the case." C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2008, at 45–46 (1970) (footnotes omitted) (hereinafter "Wright & Miller").

The vast majority of these documents are the reverse sides of newspaper clippings commenting on North Carolina's system of electing Superior Court judges. After reviewing the content of these reverse sides, the court finds that Governor Martin has accurately portrayed them as not relevant to the instant document request. Similarly, the court finds that most of the other documents asserted not to be relevant are accurately so portrayed. There are, however, five documents which the court feels *might* be relevant; these are:

| Appendix A, Page No. | Document No. |
| --- | --- |
| —— | AG00560–592 |
| —— | DG00395–396 |
| —— | DG00397 |
| —— | DG00554 |
| —— | DG00555 |

The court will hold Governor Martin's Motion to Quash in abeyance as to these five documents. If the Governor wishes to continue to claim that these documents are not relevant to the instant case, he should further supplement his Motion to Quash, in accordance with the directions infra, in Section 3. If not, he should comply with the subpoena duces tecum, and so inform the court, also in accordance with the directions in Section 3.

Accordingly, the court hereby GRANTS Governor Martin's Motion to Quash as to all those documents classified *only* as "R" in Exhibit A, with the exception of those five listed above.

### 3. Attorney–Client Privilege

Governor Martin claims that 72 documents are protected from discovery for the *sole* (*see* fn. 4) reason that they are protected by the attorney-client privilege. "The attorney-client privilege as traditionally recognized at common law and as now incorporated in the Federal Rules of Evidence[5], controls in all federal judicial proceedings." *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir.1984) (footnote shifted). The privilege has been defined as follows:

The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort;

**5.** Rule 501, Fed.R.Evid., provides in part:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

and (4) the privilege has been (a) claimed and (b) not waived by the client.

*N.C. Elec. Membership Corp. v. Carolina Power & Light Co.,* 110 F.R.D. 511, 513 (M.D.N.C.1986) (citing *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357 (D.Mass.1950); *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1160 (D.S.C.1974); and 4 *Moore's Federal Practice,* § 20.–60[2] ).

The purpose of the privilege, as recently described by the Supreme Court,

> is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).

■ The privilege protects the substance of confidential communications from client to attorney, and renders the same *immune* from discovery. 8 *Wigmore on Evidence* § 2291 (McNaughton Rev.1961). Although the protection afforded to such communications promotes public interests, the privilege does impede investigation of the truth by preventing certain evidence from being discovered. *Carolina Power & Light Co.,* 110 F.R.D. at 513 (citing *NLRB v. Harvey,* 349 F.2d 900, 907 (4th Cir.1965)). Accordingly, courts must strictly construe this privilege. *See, e.g., United States v. (Under Seal),* 748 F.2d 871 (4th Cir.1984); *In re Grand Jury Proceedings,* 727 F.2d at 1356; *United States v. Jones,* 696 F.2d 1069 (4th Cir.1982). In addition, the burden of persuasion as to *each* of the elements of the privilege is upon the proponent. *Carolina Power & Light Co.,* 110 F.R.D. at 513. As the court noted in *United States v. (Under Seal),* "in practical terms, this burden requires the proponent to explain, through ex parte submissions if necessary to maintain confidentiality, the significance or meaning of an otherwise cryptic document." 748 F.2d at 876.

In the instant case, several principles which attend the privilege should be emphasized:

■ (1) In order for the privilege to apply, the attorney-client communication must be given incident to a request for, or the rendition of, *legal advice. Carolina Power & Light Co.,* 110 F.R.D. at 514; *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146. If the communication essentially involves the giving of political advice, then it is not privileged. *Cf. Carolina Power & Light Co.,* 110 F.R.D. at 517 (communications from counsel to corporate management concerning "lobbying" efforts by the corporation not covered by the attorney-client privilege).

■ (2) The privilege does not apply to legal advice which could not arguably reveal a client's confidences. *United States v. (Under Seal),* 748 F.2d at 874. "The purpose of the privilege is to insure that the client may confide in his attorney to obtain legal advice. Unless the legal advice reveals what the client has said, no legitimate interest of the client is impaired by disclosing the advice." *SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508 (D.Conn.), *appeal dismissed,* 534 F.2d 1031 (2d Cir. 1976).

■ Most of the documents which Governor Martin claims are protected by the attorney-client privilege involve communications *from* attorney *to* client. These communications may, of course, fall within the privilege. *Carolina Power & Light Co.,* 110 F.R.D. at 514. "However, such communications are protected by privilege only if they tend to reveal confidential client communications." *Id.* (citations omitted). *See also United States v. (Under Seal),* 748 F.2d at 874 ("Because the privilege protects the substance of communications, it may also be extended to protect communications by the lawyer to his client ... *if those communications reveal client communications.*) (emphasis added).

■ Thus, memoranda or briefs prepared by counsel for his own use in prose-

cuting his client's case which do not reveal information supplied in confidence by the client, *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947), or memoranda which merely summarize the case law but contain no factual application to the client, *Carolina Power & Light Co.*, 110 F.R.D. 511, are not privileged. (These items can, of course, be protected by the work product doctrine; *see* infra.)

(3) "[T]he privilege protects only confidential client communications; that is, *communications not intended to be disclosed to third persons* other than in the course of rendering legal services to the client or transmitting the communications by reasonably necessary means." *United States v. (Under Seal)*, 748 F.2d at 874 (emphasis added) (citation omitted).

The Fourth Circuit has addressed the difficult issue of how to determine when a client intends or assumes that his communication with his attorney will remain confidential. In *United States v. (Under Seal)*, the court stated that:

> Rather than look to the existence of the attorney-client relationship or to the existence or absence of a specific request for confidentiality, we must look to the services which the attorney has been employed to provide and determine *if those services would reasonably be expected to entail the publication of the clients' communications.*

748 F.2d at 875 (emphasis added) (citations omitted). "[I]f a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as 'the details underlying the data which was to be published' will not enjoy the privilege." *United States v. (Under Seal)*, 748 F.2d at 875 (quoting *In re Grand Jury Proceedings*, 727 F.2d at 1356). In a footnote following this quotation, the Fourth Circuit elaborated on what it meant by "the details underlying the data which was to be published":

> The details underlying the published data are the communications relating the data, the document, if any, to be published containing the data, *all preliminary drafts of the document, and any attorney's notes containing material necessary to the preparation of the document.* Copies of other documents, the contents of which were necessary to the preparation of the published document, will also lose the privilege....

*Id.* at 875 n. 7 (emphasis added).

*In re Grand Jury Proceedings* is instructive in this regard. In that case, the Fourth Circuit "held that client communications to a lawyer relating to the preparation of a prospectus to be used in the enlistment of investors were not confidential even though the prospectus was never published because it 'was to be published to others and was not intended to be kept in confidence.' " *Id.* at 875 (quoting *In re Grand Jury Proceedings*, 727 F.2d at 1358). The crux of this case was that "[t]he clients had decided to publish a prospectus before approaching their attorney —thus, the attorney had been employed to convey information to third parties rather than to provide legal advice for the clients' own guidance." *Id.*

In short, "when the attorney has been authorized to perform services that demonstrate the client's intent to have his communications published ... the client lose[s] the right to assert the privilege as to the subject matter of those communications." *Id.* at 875–76.

With these principles attendant to the attorney-client privilege in mind, the court finds that the Governor has met his burden to show that the privilege applies *only* as to the following document:

| Appendix A, Page No. | Document No. |
| --- | --- |
| —— | AG00028 |

As to the remaining 71 documents for which attorney-client privilege is the *only* privilege asserted, the court perceives that many of the documents are *not* privileged because they involve attorney-client communications which: (a) occurred incident to a request for, or the rendition of, political, not legal, advice; *and/or* (b) do not arguably reveal Governor Martin's confidential communications; *and/or* (c) could not reasonably have been expected to remain confidential.

■ For example, some of these documents are cover letters which do not include facts which could reveal confidential client communications. *See Carolina Power & Light Co.*, 110 F.R.D. at 517. Many of the documents are drafts of letters and speeches, whose contents of necessity were intended to be disclosed to third parties. *See id.* ("Preliminary drafts of letters or documents which are to be published to third parties lack confidentiality.") (citing *United States v. (Under Seal)*, 748 F.2d 871, and *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. at 1168). Many more documents are memoranda prepared by counsel which do not reveal information supplied in confidence by the client, *Hickman v. Taylor*, 329 U.S. at 508, 67 S.Ct. at 392, or memoranda which merely summarize the case law but contain no factual application to the client, and thus could not be protected by the attorney-client privilege, *Carolina Power & Light Co.*, 110 F.R.D. 511.

Governor Martin has requested that, "if the Court has any questions concerning the applicable privilege, the Court first raise the particular question with counsel for the Governor prior to ordering production." Response Memorandum at 5. The court finds this request to be reasonable and, accordingly, will hold Governor Martin's Motion to Quash in abeyance as to the aforementioned 71 documents, to allow the Governor to further supplement his Motion to Quash, in the following manner:

(1) The Clerk of Court will return all of the in camera documents, *under seal,* to Governor Martin at the time of service of this order.

(2) As to those documents for which Governor Martin wishes to continue to claim privilege, he should, within thirty (30) days of the date of this order, present the same, under seal, to the court for further in camera review, accompanied by a supplemental brief accompanied by. affidavits or other *convincing evidence* showing as to *each* document why the attorney-client privilege applies (in particular, why the court's concerns expressed supra are inapplicable).

Said supplemental brief and accompanying evidence may be delivered to the court under seal should the Governor feel that this is necessary to protect the confidentiality of the documents for which attorney-client privilege is asserted.

(3) It may be that, upon thoughtful and careful review of the said 71 documents, counsel for Governor Martin will decide to waive privilege to many of the same.[6]

Accordingly, within thirty (30) days of the date of this order, Governor Martin shall comply with the subpoena duces tecum as to all documents withheld from discovery on claims of attorney-client privilege as to which Governor Martin now wishes to waive privilege. Governor Martin shall submit an inventory of the same to the court within the same time period.

### 4. *The Work Product Doctrine*

■ There are 49 documents which Governor Martin claims are protected from discovery for the *sole* reason (*see* fn. 4) that they are protected by the work product doctrine. Developed in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and codified in Federal Rule of Civil Procedure 26(b)(3)[7], the work product doc-

---

6. In this respect, the court wishes to reemphasize the admonition it made to counsel in its Order of November 7, 1990: "The court expects Governor Martin's assertion of privilege 'to be used in a limited, thoughtful and extremely discriminating manner.'" Order at 5–6 (quoting *Spell v. McDaniel*, 591 F.Supp. at 1121).

7. This rule reads in pertinent part:
[A] party may obtain discovery of *documents and tangible things* otherwise discoverable under subdivision (b)(1) of this rule and *prepared in anticipation of litigation or for trial by or for another party or by or for that other*

*party's representative* (including the other party's attorney ...) only upon a showing that the party seeking discovery has *substantial need* of the materials in the preparation of the party's case and that the party is unable *without undue hardship* to obtain the *substantial equivalent* of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court *shall* protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other repre-

trine protects materials prepared by an attorney acting for his client in anticipation of litigation absent a showing of necessity or justification for disclosure by the party seeking the documents. *See In re Grand Jury Subpoena,* 599 F.2d 504, 512 (2d Cir. 1979).

In order to come within the qualified immunity from discovery created by Rule 26(b)(3), a three-pronged test must be satisfied. The material must be:

(1) "documents and tangible things";

(2) "prepared in anticipation of litigation or for trial";

(3) "by or for another party or by or for that other party's representative." Wright & Miller § 2024, at 196–97 (quoting Rule 26(b)(3)).

■ The work product doctrine is separate from, and broader than, the attorney-client privilege. Unlike the privilege, the doctrine is not designed to protect client confidences; rather, it seeks to shelter "the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975).

■ But, like the attorney-client privilege, the application of the work product doctrine can derogate from the search for the truth. Accordingly, it should also be narrowly construed. *United States v. 22.80 Acres of Land,* 107 F.R.D. 20 (N.D. Cal.1985). The party seeking to assert the doctrine as a bar to discovery has the burden of establishing that the doctrine is applicable by establishing as to *each* document *all* the elements that trigger the protection. *Id.; Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co.,* 68 F.R.D. 397 (E.D.Va.1975). If the required showing is made to the satisfaction of the court, the burden then shifts to the party seeking discovery to show, as to *each* document, substantial need and undue hardship. *Hodges, Grant & Kaufmann v. United States,* 768 F.2d 719 (5th Cir.1985).

sentative of a party concerning the litigation.

The above rules on the burden the party seeking production must meet, applies only to the intended discovery of "fact work product" (i.e. "those documents prepared by the attorney which do not contain the mental impressions, conclusions or opinions of the attorney," *In re Doe,* 662 F.2d 1073, 1076 n. 2 (4th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982)), not "opinion work product" (i.e. "work product that contains those fruits of the attorney's mental processes," *id.*). Opinion work product is especially protected by Rule 26(b)(3), which provides that in ordering discovery of trial preparation materials when the required showing has been made, a court "shall" protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation in question. Rule 26(b)(3), Fed.R.Civ.P.

■ The writing of an attorney is a "mental impression" of that attorney. *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146 (D.S.C.1974). An attorney's legal "impressions" and "theories" include his tactics, strategy, opinions, and thoughts. *Richards–Wilcox Mfg. Co. v. Young Spring & Wire Corp.,* 34 F.R.D. 212 (N.D.Ill.1964). Opinion work product doctrine material also includes materials reflecting an attorney's legal strategy, intended lines of proof, and evaluation of the strengths and weaknesses of his case. *Sporck v. Peil,* 759 F.2d 312 (3d Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985).

■ To obtain disclosure of opinion work product, a far stronger showing of necessity and unavailability by other means must be applied than the "substantial need" and "without undue hardship" standard articulated in the first part of Rule 26(b)(3). In the Fourth Circuit, "opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Doe,* 662 F.2d at 1080 (citation omitted). *See also Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730 (4th

... (Emphasis added).

Cir.1974), *cert. denied,* 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975). Such an "extraordinary circumstance" was found to exist in *In re Doe,* where the court made a fraud exception available in order to pierce opinion work product where an attorney attempted to use the same to shield himself from criminal prosecutions arising from his actions in prior litigation. In the instant case, no such extraordinary circumstance is present.

Courts have held that, although opinion work product documents contain some minor factual content which could be physically severed from those documents, the court will not allow the same to be discovered if said factual content consists of selective facts permitting indirect inquiry into the attorney's mental processes. *See Williams v. United States Dept. of Justice,* 556 F.Supp. 63 (D.D.C.1982).

 The court notes that several documents for which work product protection is claimed were prepared for litigation other than this instant action (for the *Martin v. Preston, Crawley v. Gudger,* and *Alexander v. Martin* actions). The Fourth Circuit has held that such work product documents do not lose their protection in subsequent and unrelated litigation. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480 (4th Cir.1973). This is true even if the litigation for which they were prepared has been completed. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730.

The court finds that Governor Martin has met his burden to show that work product protection applies to certain of the 49 documents for which it is the *sole* protection claimed. The court further finds that the NCABL has not meet its burden to overcome Governor Martin's assertion of either fact or opinion work product protection as to these documents. The court will briefly identify the deficiencies it perceives in the documents for which Governor Martin does not appear to have met his burden.

Documents AG00414 (page 5), AG01368–1369 (page 13), and AG01370–1371 (page 13) are marked by an "?," indicating, quite candidly, that the assertion that they are protected by the work product doctrine is only "based [o]n the limited information currently available." After reviewing these three documents, the court perceives that Governor Martin's showing of work product protection as to the same is based upon inadequate information.

 Document AG01745–1753 (page 16) does not appear to have been prepared in anticipation of litigation. In this regard, the court notes that courts and commentators have formulated several tests for determining whether a document was prepared in anticipation of litigation or for trial, or was prepared in the ordinary course of business. *See, e.g.,* Cohn, *The Work–Product Doctrine: Protection, Not Privilege,* 71 Geo.L.J. 917 (1983) (and cases and articles cited therein). If the former is the case, the document is protected as work product, whereas if the latter is the case, the document is not so protected. *See, e.g., Soeder v. General Dynamics Corp.,* 90 F.R.D. 253 (D.Nev.1980); *Miles v. Bell Helicopter Co.,* 385 F.Supp. 1029 (N.D.Ga. 1974). The test most frequently enunciated is the test the court believes to be the correct one: "[I]n light of the nature of the document and the factual situation in the particular case, can the document be fairly said to have been prepared or obtained *because of* the prospect of litigation?" Wright & Miller § 2024, at 198 (footnote omitted); *United States v. Gulf Oil Corp.,* 760 F.2d 292 (Temp.Emer.Ct.App.1985).

 There are also certain documents which contain only compilations of facts, and are devoid of any legal analysis (and, apparently, any legal significance), and are thus unprotected by the work product doctrine: DG00156 (page 21), DG00383 (page 24), DG00398–415 inclusive (pages 25–26), and DG00598–599 (page 31).

Lastly, the court perceives that counsel can redact the margin notes and highlighting from documents AG00309–387 (page 4), AG00485–518 (page 5), AG01334–1336 (page 12), AG01346–1347 (page 12), AG01806 (page 17), DG00241–242 (page 22), DG00416 (page 27), and DG00447 (page 27), and produce the same for discovery.

The court hereby GRANTS Governor Martin's Motion to Quash as to all those documents for which work product protection is the *sole* protection claimed, with the exceptions specifically noted supra. The court will hold the Motion to Quash in abeyance as to these aforementioned documents, to allow Governor Martin to further supplement his Motion to Quash, or to comply with the subpoena duces tecum as to those documents, and so inform the court, in accordance with the directions supra, in Section 3.

### 5. Documents which are Classified in Alternate Categories

The court rules as follows on these 23 documents:

| Appendix A, Page No. | Document No. | Ruling | Reason |
|---|---|---|---|
| —— | AG00029–30 | Inadequate showing | |
| —— | AG00101–104 [8] | Protected | WP |
| —— | AG00104A | Protected | R |
| —— | AG00105–107 | Protected | WP |
| —— | AG00295–299 | Protected | WP |
| —— | AG00301–302 | Protected | WP |
| —— | AG00388–391 | Protected | WP |
| —— | AG00393–399 | Protected | WP |
| —— | AG00467–484 | Protected | WP |
| —— | AG00960–979 | Inadequate showing (redact) | |
| —— | AG00993–997 | Inadequate showing (redact) | |
| —— | AG01020–1021 | Protected | ACP; WP |
| —— | AG01615–1622 | Protected | R |
| —— | AG01635 | Inadequate showing | |
| —— | AG01690–1696 | Inadequate showing (redact) | |
| —— | DG00149–150 | Protected | WP |
| —— | DG00393–394 | Protected | WP |
| —— | DG00467–468 | Protected | WP |
| —— | DG00482–489 | Unprotected | W; Public record |
| —— | DG00555 | Inadequate showing | |
| —— | DG00611–612 | Inadequate showing (redact) | |
| —— | DG00614–617 | Unprotected | W; Public record |
| —— | DG00632–646 | Inadequate showing | |

The court GRANTS the Motion to Quash as those aforementioned documents listed as "protected." As to those documents listed above for which an inadequate showing of privilege has been made, the court will hold the Motion to Quash in abeyance to allow Governor Martin to further supplement his Motion to Quash, or to waive any privilege for the documents so classified, as discussed supra, in Section 3. Governor Martin is ORDERED to comply with the subpoena duces tecum as to the "unprotected" aforementioned documents, within ten (10) days of the date of this order.

### CONCLUSION

For the reasons expressed above, the court has hereby:

(1) DIRECTED the Clerk of Court to return all of the in camera documents, *under seal,* to Governor Martin at the time of service of this order;

(2) ORDERED Governor Martin to comply with the NCABL's subpoena duces tecum as to those documents found to be unprotected in Sections 1 and 4 of the instant order, within ten (10) days of the date of this order;

**8.** *See* fn. 1.

(3) GRANTED Governor Martin's Motion to Quash to the limited extent set forth supra;

(4) HELD IN ABEYANCE Governor Martin's Motion to Quash to the extent discussed supra, to allow him thirty (30) days from the date of this order within which to supplement said motion in the manner set forth in this order, should he choose to do so; and

(5) ORDERED the Governor, within thirty (30) days of the date of this order, to comply with the NCABL's subpoena duces tecum as to all documents withheld from discovery on claims of privilege as to which Governor Martin now wishes to waive privilege, and to submit an inventory of the same to the court.

SO ORDERED.

## EXHIBIT A

Abbreviations Used on Index of Privileged Documents:

"The Governor" or JGM—Governor James G. Martin
JRT—James R. Trotter (General Counsel)
SAW—Samuel A. Wilson (Legal Counsel)
JCH—John C. Hunter—(Legal Counsel)
Purrington—J. Ward Purrington—(Legislative Counsel)
"GOP Litigation"—Republican Party of North Carolina, et al. v. James G. Martin, Governor of North Carolina, et al. and North Carolina Association of Black Lawyers, 88–263–CIV–5–F

W—waiver of privilege
ACP—attorney client privilege
WP—work product
R—not relevant
NP—no privilege asserted
?—asserted privilege is based in the limited information currently available

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| **I. GENERAL COUNSEL'S FILES** | | |
| **A. GOVERNOR'S SPECIAL COMMITTEE ON JUDICIAL SELECTION** | | |
| W | AG00001–8 | 9–14–87 correspondence to JRT from Campen with attached periodical article |
| ACP—legal memorandum between JRT and the Governor | AG00009–11 | 6–10–87 correspondence to Wells from the Governor with communication by JRT |
| WP—GOP Litigation | AG00012–14 | Handwritten notes prepared by JRT |
| W | AG00015–27 | Undated draft entitled "Judicial Selection—A Proposal" with attached chart |
| ACP—JRT notes re: communications with the Governor | AG00028 | Handwritten notes of JRT |
| WP; ACP(?) prepared by JRT in anticipation/course of litigation; recollection is ultimately used in communication with the Governor | AG00029–30 | 11–26–86 handwritten notes of JRT |
| W | AG00031–33 | Undated N.C. Bar Association Committee Roster for Administration of Justice Study with unknown source of handwritten notes |
| W | AG00034–48 | "Selecting Judges in the States: A Brief History and Analysis" published in volume 9 Northern Kentucky Law Review, pages 459–473 |
| W | AG00049 | 7–31 telephone message to JRT from Smith |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| W | AG00050–84 | 10–30–86 memorandum to Purrington, JRT, Hunter and Cobb from SAW re: Model Judicial Selection Provisions with attachments |
| W | AG00085–91 | 7–29–86 correspondence to Browning from JRT with attachment, 7–29–86 correspondence to Coggins from JRT, 7–16–86 correspondence to Milliken from JRT, 7–2–86 correspondence to JRT from Milliken, 7–16–86 correspondence to Drennan from JRT, 7–3–86 correspondence to JRT from Drennan |
| ACP—privilege communication between in-house counsel | AG00092–93 | 7–1–86 memorandum to JRT from SAW with attachment and attorney notes |
| ACP—legal communication between JRT and the Governor | AG00094–99 | 7–7–86 transmittal memorandum from the Governor to JRT with attachments |
| W | AG00100 | 7–8–86 correspondence to Beard from JRT |
| ACP; WP—JRT notes communicated to Governor; prepared by JRT in anticipation/course of litigation | AG00101–104 | Handwritten notes of JRT |
| R; ACP—JRT notes communicated to Governor; unrelated to instant litigation | AG00104A | Unrelated handwritten notes of JRT that happen to be written on back of other notes related to the litigation |
| ACP; WP—prepared by legal intern (law student) on Governor's staff for JRT's use in advising JGM; prepared in anticipation/course of litigation | AG00105–107 | 6–10–86 handwritten note of legal intern to JRT with attached memorandum |
| W | AG00108–112 | Handwritten note from Branch to JRT with attachment |
| W | AG00113–294 | 6–9–86 correspondence to Beard from Birkes with attachments |

B. GOVERNOR—LITIGATION; REPUBLICAN PARTY V. MARTIN

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| R (trial strategy); WP—mental impressions, conclusions and legal theories of counsel prepared and obtained in anticipation/course of litigation | AG00295–299 | 8–29–89 memorandum to Foster from JRT with attachments |
| NP | AG00300 | 8–22–89 correspondence to JRT from Hurley |
| R (trial strategy); WP(?)—appears to be mental impressions, conclusions and legal theories prepared or obtained in anticipation/course of litigation | AG00301–302 | Undated typed note of unknown source |
| WP | AG00303–308 | 8–28–89 typed notes by unknown source obtained in course of litigation with handwritten notes of JRT |
| WP | AG00309–387 | 9–21–88 transcript of preliminary injunction hearing with JRT's handwritten notes |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| R (trial strategy); WP—mental impressions, conclusions and legal theories of JRT prepared in anticipation/course of litigation | AG00388–391 | Undated memorandum to Foster, Hunter and Hurley from JRT |
| ACP (Thornburg was representing the Governor at time of communication) | AG00392 | 11–12–87 correspondence to the Governor from Thornburg |
| WP; ACP note—7/20/87 document obtained in course of litigation and reflects trial strategy | AG00393–399 | 7–30–87 correspondence to Gray from JRT, undated memorandum to JRT from Hunter, 7–20–87 correspondence to JRT from Gray (2 copies) |
| Public record | AG00400–413 | 10–5–88 Order entered in pending case |
| WP(?) at this time we are unable to identify origin of document but content appears to reflect mental impressions and theories of litigation | AG00414 | Document of unknown origin |
| Public record | AG00415–416 | Civil summons in pending case |
| Public record | AG00417–466 | 11–4–87 copy of the complaint filed in Middle District of North Carolina, No. C–87–779–G |
| R (trial strategy); WP | AG00467–484 | Outline of proof of unknown source in GOP litigation with handwritten notes of JRT |
| WP | AG00485–518 | 8–1–88 Plaintiffs' Motion for Preliminary Injunction with attached Memorandum; highlighting of JRT |
| WP—legal research obtained by JRT and legal counsel staff in anticipation of litigation | AG00519–559 | Case law |
| R | AG00560–592 | 8–28–89 published opinion in South Carolina Education Association v. Campbell |
| WP—obtained by JRT and legal counsel staff in anticipation/course of litigation | AG00593–628 | WESTLAW research with handwritten notes |
| W | AG00629–738 | Excerpts from Debates at the 1868 Convention re: Superior Court Judges |
| W | AG00739–776 | Hunter's "Racial Gerrymandering and the Voting Rights Act in North Carolina", volume 9, Campbell Law Review, number 2 |
| WP—legal research obtained by JRT and legal counsel staff in anticipation/course of litigation | AG00777–916 | Case law |
| C. JUDGESHIP BILL (H.B. 589) | | |
| W | AG00917–918 | 5–11–87 correspondence to Jordan from the Governor with 5–8–87 correspondence to the Governor from Jordan attached |
| W | AG00919 | 5–8–87 correspondence to Jordan from the Governor |
| ACP—draft statement prepared by JCH for the Governor | AG00920–926 | 5–5–87 draft statement prepared by JCH for the Governor re: H.B. 589 |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
| --- | --- | --- |
| Public record | AG00927–934 | Undated final statement of the Governor re: H.B. 589 |
| ACP—memorandum prepared by JCH for the Governor | AG00935–937 | Undated memorandum prepared by JCH for the Governor |
| Public record | AG00938–956 | 4–13–87 House Bill 589 |
| ACP—memorandum prepared by JCH for the Governor | AG00957–959 | Undated memorandum prepared by JCH for the Governor |
| WP; ACP—handwritten notes and highlighting by JRT; used to advise the Governor | AG00960–979 | Undated Senate Bill 287 with handwritten notes of JRT |
| Public record | AG00980–992 | 3–25–87 Senate Bill 214 |
| ACP; WP—handwritten notes by JRT with draft of memorandum prepared by JCH | AG00993–997 | Handwritten notes of JRT with draft memorandum re: H.B. 589 and S.B. 287 |
| ACP—legal communication between the Governor and JRT | AG00998 | Memorandum to the Governor from JRT |

### D. LOOSE DOCUMENTS—NO FILE

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
| --- | --- | --- |
| ACP—(Thornburg was representing the Governor in this litigation at time of the communication) legal communication between Thornburg and the Governor | AG00999–1004 | 11–12–87 correspondence to Thornburg from the Governor |
| Public record | AG01005–1007 | 4–23–86 Remarks to North Carolina Courts Commission by Purrington |
| Public record | AG01008–1012 | 2–7–86 Statement to the North Carolina Courts Commission on Behalf of the Governor |
| W | AG01013 | Judicial Selection Study Commission |
| ACP—legal communication between JRT and the Governor | AG01014–1017 | Memorandum to the Governor from JRT with attachment |
| ACP—legal communication between JRT and the Governor | AG01018–1019 | 12–22–86 memorandum to the Governor from JRT |
| ACP; WP | AG01020–1021 | 2 copies of 5/4/89 memorandum to the Governor from JRT, with handwritten notes of the Governor and Purrington |
| W | AG01022–1027 | Memorandum to the Governor from JRT with copies to Purrington, Kirk and Hays |
| ACP—reflects communication between the Governor and JRT | AG01028 | Undated handwritten notes prepared by JCH and JRT |
| Public record | AG01029–1049 | 2–21–89 Senate Bill 219 stamped "Adopted" |

### E. NEGOTIATIONS WITH ALLEN FOSTER, TOM ROSS AND CHARLIE WINBERRY

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
| --- | --- | --- |
| ACP—prepared by JRT to advise the Governor | AG01050–1052 | Handwritten notes of JRT |
| ACP—prepared by JRT to advise the Governor | AG01053–1058 | Undated notes of JRT |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| Public record | AG01059–1066 | 5–16–85 Senate Bill 676 |
| Public record | AG01067–1080 | 5–15–85 Senate Bill 677 |
| W | AG01081–1094 | Undated draft bill of unknown source with highlighting of JRT |
| W | AG01095–1108 | Undated draft bill of unknown source with highlighting of JRT |

**F. MERIT SELECTION—LEGISLATION (S.B. 676 & 677)**

| | | |
|---|---|---|
| W | AG01109–1124 | 6–18–85 correspondence to Soles from Cobb with attachment; with handwriting and notes of JRT |
| Public record | AG01125–1220 | Report of the Courts Commission to the North Carolina General Assembly 1985 |

**JUDICIAL SELECTION—Press Clippings**

| | | |
|---|---|---|
| R | AG01221 | 5–13–87 Asheville Citizen article |
| W | AG01222 | 5–14–87 Winston–Salem Journal article, with highlighting of JRT |
| R | AG01223 | 5–15–87 N & O article |
| W | AG01224 | 5–15–87 Wilson Daily Times article |
| R | AG01225 | 5–28–87 Washington Daily News article |
| W | AG01226 | 5–28–87 Wilson Daily Times article |
| R | AG01227 | 6–19–87 Charlotte Observer editorial |
| W | AG01228 | Winston–Salem Journal editorial |
| R | AG01229 | N & O editorial |
| W | AG01230 | 6–28–87 Asheville Citizen editorial, with highlighting by JRT |
| W | AG01231 | Fayetteville Observer editorial |
| R | AG01232 | 5–9–87 N & O articles |
| W | AG01233 | 5–8–87 Wilson Daily Times editorial |
| R | AG01234 | 5–9–87 Wilson Daily Times articles |
| W | AG01235 | 5–7–87 Winston–Salem Journal editorial |
| R | AG01236 | Charlotte Observer article |
| W | AG01237 | 2–19–87 Durham Morning Herald editorial; Fayetteville Observer editorial |
| R | AG01238 | 2–19–87 "Committee Backs Sanford on Nicaragua", N & O article |
| R | AG01239 | 1–22–87 Wilson Daily News articles |
| W | AG01240 | N & O editorial |
| W | AG01241 | 2–13–87 Winston–Salem Journal article |
| W | AG01242 | 2–13–87 N & O article |
| W | AG01243 | 1–21–87 N & O editorial |
| R | AG01244 | 1–20–87 Asheville Citizen editorial |
| W | AG01245 | 1–6–87 Winston–Salem Journal editorial |
| R | AG01246 | 1–5–87 Asheville Citizen editorial |
| W | AG01247 | 1–5–86 Fayetteville Observer editorial |
| R | AG01248 | 1–6–87 N & O editorial |
| W | AG01249 | 12–18–86 Salisbury Post editorial, with highlighting of JRT |
| R | AG01250 | 12–18–86 Salisbury Post editorial |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| W | AG01251 | 12–14–86 Winston–Salem Journal editorial |
| W | AG01252 | 12–14–86 Salisbury Post editorial |
| W | AG01253 | Charlotte Observer editorial |
| R | AG01254 | 4–29–87 Daily Courier editorial |
| W | AG01255 | 4–21–87 Charlotte Observer editorial |
| W | AG01256 | 4–21–87 Charlotte Observer editorial |
| W | AG01257 | 4–19–87 Winston–Salem Journal editorial |
| R | AG01258 | 4–17–87 Watauga Democrat article |
| W | AG01259 | 4–18–87 High Point Enterprise editorial |
| W | AG01260 | 4–21–87 Winston–Salem Journal editorial |
| R | AG01261 | 4–21–87 Wilson Daily Times editorial |
| W | AG01262 | 4–16–87 Salisbury Times editorial |
| R | AG01263 | 4–20–87 N & O editorial |
| W | AG01264 | 4–16–87 Fayetteville Observer editorial |
| R | AG01265 | 4–16–87 Raleigh Times editorial |
| W | AG01266 | 4–16–87 Greensboro News & Record editorial |
| R | AG01267 | 4–16–87 Greensboro News & Record editorial |
| W | AG01268 | 3–17–87 Winston–Salem Journal editorial |
| R | AG01269 | 3–15–87 Salisbury Post editorial |
| . W | AG01270 | 3–10–87 Daily Courier editorial |
| R | AG01271 | 3–11–87 Asheville Citizen editorial |
| W | AG01272 | 2–23–87 Salisbury Post editorial |
| R | AG01273 | 2–24–87 Greensboro News & Record editorial |
| W | AG01274 | 2–16–87 Wilmington Morning Star editorial |
| R | AG01275 | 2–23–87 Charlotte Observer editorial |
| W | AG01276 | 2–18–87 High Point Enterprise editorial |
| R | AG01277 | 2–19–87 Wilson Daily Times editorial |
| R | AG01278 | 2–17–87 Washington Daily News editorial |
| W | AG01279 | 2–18–87 Durham Morning Herald editorial |
| W | AG01280 | 2–27–87 Wall Street Journal article |
| W | AG01281 | 1–17–87 N & O article, with highlighting of JRT |
| R | AG01282 | 12–6–86 Greensboro News & Record article, with highlighting of JRT |
| R | AG01283 | 12–9–86 Wilson Daily Times article |
| R | AG01284–1286 | 3 copies of 12–6–86 Greensboro News & Record article |
| W | AG01287 | 12–4–86 Winston–Salem Journal editorial |
| R | AG01288 | 12–3–86 Asheville Citizen editorial |
| W | AG01289 | 12–3–86 Charlotte Observer article |
| R | AG01290 | 12–3–86 Greensboro News & Record article |
| W | AG01291 | 11–20–86 Washington Daily News editorial |
| R | AG01292 | 11–20–86 Washington Post article |
| ACP—reflects advice of JRT to the Governor | AG01293–1298 | Handwritten notes of JRT |
| W | AG01299–1301 | Copies of 11–19–86 Durham Morning Herald editorial |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| W | AG01302–1303 | 12-2-86 correspondence to JRT from Donaldson with 12-4-86 correspondence to JRT from Parker attached |
| W | AG01304–1307 | 12-16-86 telephone message to JRT from Head with 11-25-86 handwritten note of JRT and attachment |
| W | AG1308–1313 | 1-13-87 correspondence to Vosburgh from Exum with attachments |
| W | AG01314–1319 | 12-8-86 correspondence to Roule from Head with attachments |
| W | AG01320 | 11-16-86 Winston–Salem Journal editorial |
| R | AG01321 | 11-17-86 N & O editorial |
| W | AG01322 | 11-16-86 N & O editorial |
| R | AG01323 | 11-15-86 N & O article |
| W | AG01324 | Undated Charlotte Observer editorial |
| W | AG01325 | 10-3-86 Wilmington Morning Star editorial |
| W | AG01326 | 9-26-86 Daily Tar Heel editorial |
| W | AG01327 | 9-29-86 N & O article |
| W | AG01328 | 9-24-86 Greensboro News & Record editorial |
| R | AG01329 | 9-11-86 Hertford article |
| W | AG01330 | 9-23-86 Winston–Salem Journal editorial |
| R | AG01331 | 9-23-86 N & O article |
| W | AG01332 | 9-15-86 Greensboro News & Record editorial |
| W | AG01333 | 4-23-86 Greensboro News & Record editorial |

### G. JUDICIAL SELECTION

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| WP—JRT obtained in anticipation/course of litigation | AG01334–1336 | Article obtained by JRT in anticipation of litigation, with handwritten comments of JRT |
| Public record | AG01337–1338 | 2-13-87 Senate Bill 31 |
| W | AG01339–1341 | 6-10-86 correspondence to JRT and SAW from Beard |
| W | AG01342 | September–October 1985, *Bar Leader*, article |
| W | AG01343–1345 | March–April 1986, *Bar Leader*, article |
| WP—obtained by JRT in anticipation/course of litigation | AG01346–1347 | Article from *Barnotes*, with highlighting of JRT |
| W | AG01348–1352 | 12-11-86 handwritten note to JRT from Browning with attachment; highlighting of JRT |
| W | AG01353 | 12-9-86 correspondence to Beard from Wells |
| W | AG01354–1356 | 2-27-87 correspondence to Bogle from Pugh with attachment |
| W | AG01357–1365 | 12-17-86 memorandum to Merit Selection Committee from Purrington with attachment |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| ACP—prepared by JRT for JGM | AG01366–1367 | Undated memorandum of JRT |
| WP(?)—appears to be mental impressions, conclusions and legal theories prepared or obtained in anticipation/course of litigation | AG01368–1369 | Undated typewritten notes of unknown source at this time |
| WP(?)—appears to be mental impressions, conclusions and legal theories prepared or obtained in anticipation/course of litigation | AG01370–1371 | Undated typewritten notes of unknown source at this time |
| ACP—reflects JRT's communication with the Governor | AG01372 | Notes of JRT |
| W | AG01373–1376 | 2–15–85 correspondence to JRT from Hunter with attachment |
| W | AG01377–1383 | 12–20–84 draft bill |
| W | AG01384–1395 | 12–20–84 draft bill |
| W | AG01396–1563 | Undated handwritten memorandum to JRT from Scott with following attached: |

[Attachments to AG01396–1563]

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| ACP—reflects communication with the Governor | AG01397 | Handwritten notes of JRT |
| ACP—reflects communication with the Governor | AG01398 | Handwritten notes of JRT |
| W | AG01399 | 12–13–84 correspondence to Martin from Sanders |
| W | AG01400 | 12–21–84 memorandum to Martin from Sanders |
| W | AG01401 | 12–21–84 correspondence to Hunter from Sanders |
| W | AG01402 | 12–13–84 correspondence to Martin from Sanders |
| W | AG01403–1404 | 12–11–84 memorandum to Martin from Sanders with attachment |
| W | AG01405–1411 | Winter 1984, Popular Government, "The Separation of Powers in North Carolina—A 1984 Update", Ann L. Sawyer |
| W | AG01412–1414 | 1–9–85 correspondence to JRT from Hunter |
| W | AG01415–1417 | Undated "Administrative Procedure" with cover page for "A Summary of Legislation in the 1984 General Assembly of Interest to North Carolina Public Officials" |
| R | AG01418–1435 | 10–20–83 Governor's Administrative Rules Review Commission |
| R | AG01436–1460 | 1982 "A Review of Legislation with Respect to the Preparation and Administration of the North Carolina State Budget", John L. Sanders |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| R | AG01461–1507 | 6–27–84 House Bill 1784 |
| R | AG01508–1509 | NCBA Administrative Law Committee Recommendation on House Bill 1784 |
| W | AG01510–1516 | 12–20–84 draft bill |
| W | AG01517–1528 | 12–20–84 draft bill |
| W | AG01529–1530 | December 1984 typewritten notes of Drennan, I.O.G. with handwritten comments |
| W | AG01531–1532 | December 1984 typewritten notes of Drennan, I.O.G. with handwritten comments |
| W | AG01533–1547 | 4–12–79 House Bill 1163 |
| W | AG01548–1555 | 4–12–79 House Bill 1164 |
| R | AG01556–1557 | Undated, untitled typewritten notes (believed prepared by Jack Cozart, unrelated to this litigation) |
| W | AG01558 | 12–14–84 correspondence to Hunter from Baker |
| W | AG01559–1560 | 12–10–84 correspondence to Hunter from Wells |
| W | AG01561–1563 | 11–23–84 correspondence to the Governor from Ayscue |

[End of Attachments to AG01396–1563]

| | | |
|---|---|---|
| NP—document prepared by transition team member | AG01564–1572 | 1–4–85 Judicial Department transition report by Hunter |
| R | AG01573–1610 | 2–1–83 state personnel policy |
| W | AG01611–1614 | Undated copy of section entitled "The Judicial Branch" from North Carolina Manual pages 764–770 with handwritten comments |

### H. JUDICIAL SELECTION—S.B. 219

| | | |
|---|---|---|
| R; ACP—legal counsel's analysis of pending legislation unrelated to the instant litigation | AG01615–1622 | 4–12–89 Senate Bill 857 with memorandum to JRT and Purrington from JCH with attachments |
| ACP—legal communication between JRT and the Governor | AG01623–1634 | 2–27–89 memorandum to the Governor from JRT with attachments |
| WP; ACP—notes reflect in-house communication between JRT and JCH | AG01635 | Handwritten notes by unknown source |
| ACP—prepared by JRT to communicate advice to the Governor | AG01636–1637 | Handwritten notes of JRT |
| ACP—legal communication between JRT and the Governor | AG01638–1641 | Typewritten memorandum of JRT |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| ACP—prepared by JRT for the Governor | AG01642–1651 | Undated memorandum prepared by JRT re: S.B. 218, and proposed constitutional amendments with 2–21–89 substituted S.B. 218 attached |
| ACP—prepared by JRT for the Governor | AG01652–1681 | Undated memorandum re: proposed S.B. 219 with 2–21–89 substitute S.B. 219 attached |
| ACP—reflects Governor's confidential communication to his attorneys | AG01682–1685 | 4–10–89 memorandum; handwritten communication by the Governor to JRT and Purrington; handwriting and underlining by the Governor |
| ACP—reflects Governor's confidential communication to his attorneys | AG01686–1689 | 4–10–89 memorandum; handwritten communication by the Governor to JRT and Purrington; handwriting and underlining by the Governor |
| ACP; WP—handwritten notes of JRT used to advise JGM on pending litigation | AG01690–1696 | 2–21–89 SPCS218–RM proposed substitute for S.B. 218 marked "superceded" with handwritten comments of JRT |
| W | AG01697–1723 | Senate DRS4506–LB(1.11) filed 2–20–89 marked "superceded" |
| W | AG01724–1744 | 2–21–89 Proposed committee substitute PCS1616 for S.B. 219 marked "superceded" |
| WP—prepared or obtained by JRT in anticipation/course of litigation | AG01745–1753 | 3–29–89 correspondence to JRT from Hunter with attachments |
| Public record | AG01754–1804 | 2–15–89 Report of the Judicial Selection Study Commission; Report to the Governor, Chief Justice, Attorney General and the 1989 General Assembly of North Carolina |
| W | AG01805 | Undated map of North Carolina showing Superior Court judicial districts as of January 1, 1989 |

## I. LOOSE DOCUMENT—NO FILE

| | | |
|---|---|---|
| WP—obtained by JRT in anticipation/course of litigation; notes reflect mental impressions | AG01806 | November 1990 Asheville Citizen Times article, with notes of JRT |

## II. **CHIEF OF STAFF'S FILES**

| | | |
|---|---|---|
| W | BG00001 | 2–9–89 memorandum to the Governor from Kirk |
| ACP—legal communication between JRT and the Governor | BG00002–3 | 12–7–88 memorandum to the Governor from JRT through Kirk |
| W | BG00004–8 | 4–24–89 memorandum to the Governor from JRT |

## III. **LEGISLATIVE COUNSEL'S FILES**

| | | |
|---|---|---|
| W | CG00001–18 | 11–4–86 handwritten memorandum to Legg from Fairchild with attachments |
| W | CG00019–20 | 10–10–86 correspondence to Drennan from Helms |
| W | CG00021–32 | 1979 documents detailing judicial selection in Arizona, California, New Hampshire, New Jersey, and Wyoming, with handwritten notes of unknown source |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| ACP—memorandum prepared by assistant attorney to Governor's Legislative Counsel; used by Purrington to advise the Governor | CG00033–44 | 5 copies 11–5–86 memorandum to Purrington from Legg (Legg was an assistant attorney to Legislative Counsel) |
| W | CG00045–71 | Undated tables and appendix |
| W | CG00072–79 | 1979 untitled documents detailing judicial selection in North Carolina, Pennsylvania, Louisiana and Idaho |
| ACP | CG00080–81 | Undated preliminary draft document, culminating in legal memorandum of CG00033–44 |

## IV. LEGAL COUNSEL'S FILES

### A. FILE 9, GOVERNOR'S STATEMENT ON HOUSE BILL 589

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| W | DG00001–19 | 4–13–87 House Bill 589 |
| WP—document obtained or prepared in course of *Martin v. Preston*, 325 NC 438 (1989), litigation ("*Preston* litigation"), with JCH's handwritten comments | DG00020–27 | 2–19–88 typewritten memorandum |
| WP—*Preston* Litigation | DG00028–32 | 2–19–88 typewritten memorandum with handwritten comments of JCH |
| WP—*Preston* Litigation | DG00033–36A | Undated draft of proposed stipulations with handwritten comments of JCH |
| Public record | DG00037–47 | 4–13–87 House Bill 589 |
| ACP—draft statement prepared by JCH for the Governor | DG00048–54 | Undated draft prepared by JCH re: H.B. 589 |
| ACP—memorandum prepared by JCH for the Governor | DG00055–57 | Undated memorandum prepared by JCH re: H.B. 589 |
| ACP—draft statement prepared by JCH for the Governor | DG00058–67 | Draft statement prepared by JCH for the Governor |
| ACP—draft document prepared by JCH for the Governor | DG00068–78 | Draft statement prepared by JCH for the Governor |
| ACP—draft statement prepared by JCH for the Governor | DG00079–88 | Draft statement prepared by JCH for the Governor |
| ACP—draft statement prepared by JCH for the Governor | DG00089–99 | Draft statement prepared by JCH for the Governor |
| ACP—draft statement prepared by JCH for the Governor | DG00100–109 | Draft statement prepared by JCH for the Governor |
| ACP—draft document prepared by JCH and JRT for the Governor | DG00110–119 | Draft statement prepared by JCH for the Governor, with handwritten comments of JRT |
| ACP—draft statement prepared by JCH for the Governor | DG00120–128 | Draft statement prepared by JCH for the Governor |
| ACP—draft statement prepared by JCH for the Governor | DG00129–136 | Draft statement prepared by JCH for the Governor |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| **B. SUPERIOR COURT ELECTIONS—2; FILE NO. 0792** | | |
| NP—public record presented to Senate Committee on Courts and Administration of Justice | DG00137–143 | Undated Statement of the Governor re: H.B. 589, final draft |
| ACP—draft statement prepared by JCH for the Governor with handwritten comments of the Governor | DG00144–148 | Draft statement prepared by JCH for the Governor |
| ACP; WP—prepared by JRT for use of the Governor prepared in anticipation/course of *Preston* litigation | DG00149–150 | Typewritten memorandum of JRT with his handwritten comments |
| WP—obtained by JCH in anticipation/course of the *Crawley v. Gudger* litigation ("*Gudger* litigation") | DG00151 | Typewritten chart of JCH with his handwritten notes |
| WP—prepared by JCH in anticipation/course of *Gudger* litigation, with handwritten comments of JCH | DG00152 | Undated handwritten notes of JCH |
| WP—obtained by JCH in anticipation/course of *Gudger* litigation, with handwritten comments of JCH | DG00153 | Typewritten chart obtained by JCH with his handwritten notes |
| R | DG00154 | 1–12 telephone message to unknown person from Page re: unrelated trial decision |
| WP—prepared by JCH in anticipation/course of *Gudger* litigation | DG00155 | Undated handwritten notes of JCH |
| WP—obtained by JCH in anticipation/course of *Gudger* litigation, with handwritten comments of JCH | DG00156 | Undated typewritten chart obtained by JCH |
| W | DG00157–157A | 9–28–87 correspondence to Freeman from Jones with attachment |
| WP—prepared by JCH in anticipation/course of *Gudger* litigation | DG00158 | Undated handwritten notes of JCH |
| ACP—prepared by JRT for use of the Governor | DG00159–160 | Undated typewritten memorandum of JRT |
| WP—prepared by JRT in anticipation/course of litigation | DG00161 | 10–12–87 typewritten agenda of JRT |
| W | DG00162–164 | 9–18–87 correspondence to Brock from Wallace with attachments |
| WP—prepared in anticipation/course of litigation | DG00165 | 10–12–87 typewritten agenda of JRT with handwritten comments of JCH |
| WP—prepared by JCH in anticipation/course of *Gudger* litigation | DG00166–167 | 2 copies of undated typewritten memorandum prepared by JCH |
| WP—prepared by JCH in anticipation/course of litigation | DG00168 | Undated typewritten memorandum prepared by JCH |
| WP—prepared by JCH in anticipation/course of *Gudger* litigation | DG00169 | Undated typewritten memorandum prepared by JCH |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| WP—prepared by JCH in anticipation/course of *Gudger* litigation | DG00170–171 | Undated typewritten memorandum prepared by JCH (2 copies) |
| WP—prepared by JCH in anticipation/course of *Gudger* litigation | DG00172 | Undated handwritten notes of JCH |
| W | DG00173–194 | 4–13–87 House Bill 589 |
| W | DG00195–205A | 4–13–87 House Bill 589· |
| W | DG00206–217 | 4–13–87 House Bill 589 |
| W | DG00218–227C | 4–13–87 House Bill 589 |
| W | DG00228–239 | 4–13–87 House Bill 589 |
| W | DG00240 | 5/28/87 handwritten notes of unknown source |
| WP—obtained by JRT in anticipation/course of *Preston* litigation | DG00241–242 | 5–22–89 N & O article with highlighting of JRT; written communication of JRT to SAW |
| WP—obtained by SAW in anticipation/course of *Preston* litigation | DG00243–244 | 5–22–87 correspondence to SAW from Bogle, with attachment |
| ACP—prepared by SAW and JCH for JGM | DG00245–248 | Undated draft memorandum of SAW and JCH |
| ACP—notes of JCH and SAW to prepare the Governor's statement on H.B. 589 | DG00249–254 | 8–31–87 handwritten notes of JCH and SAW |
| W | DG00255 | 5–8–87 "Electing Judges", Wilson Daily Times |
| ACP—draft document prepared by JCH for the Governor's statement on H.B. 589 | DG00256–264 | Undated draft statement prepared by JCH for the Governor re: H.B. 589 |
| ACP—draft document prepared by JCH and SAW for the Governor | DG00265–275 | Undated draft memorandum prepared by JCH with handwritten comments of SAW |
| Public record | DG00276–284 | Undated Statement of the Governor re: H.B. 589, marked final draft 5/4/87 |
| ACP—draft statement prepared by JCH for use by the Governor | DG00285–302 | 2 copies of undated draft statement prepared by JCH |
| ACP—draft documents prepared by JCH and SAW for the Governor | DG00303–312 | Undated draft recommendation of the Governor re: H.B. 589 prepared by JCH with handwritten notes of SAW |
| ACP—draft statements prepared by JCH and SAW for the Governor | DG00313–321 | Undated draft statement prepared by JCH for the Governor re: H.B. 589 with handwritten comments of SAW |
| ACP—draft statement prepared by JCH and SAW for the Governor | DG00322–329 | Undated draft statement prepared by JCH for the Governor re: H.B. 589 with handwritten notes of SAW |
| ACP—draft prepared by JCH and JRT for the Governor | DG00330–338 | Undated draft statement prepared by JCH for the Governor re: H.B. 589 with handwritten notes of JRT |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| ACP—draft documents prepared by JCH and JRT for the Governor | DG00339–349 | Undated draft recommendation prepared by JCH for the Governor re: H.B. 589 with handwritten comments of JRT · |
| ACP—draft documents prepared by JCH and SAW for the Governor | DG00350–359 | Undated draft recommendation prepared by JCH for the Governor re: H.B. 589 with handwritten comments of SAW |
| ACP—legal analysis by SAW to Governor's in-house attorneys and Chief of Staff | DG00360–361 | 5-20-87 handwritten notes of SAW to Purrington, Pugh, JRT and Kirk |
| ACP—highlighting by JCH for use in advising the Governor re: H.B. 589 | DG00362–372A | 4-13-87 House Bill 589 with highlighting of JCH |
| W | DG00373–374 | 5-21-87 correspondence to Bogle from SAW, with 5-17-87 correspondence to SAW from Bogle attached |
| Public record | DG00375–376 | General Assembly of North Carolina, Session 1987, House Bill 1514, pages 103 and 104 |
| ACP—notes reflecting communication with in-house attorneys and Chief of Staff | DG00377–382 | Undated handwritten notes of SAW re: H.B. 598 |
| WP—obtained by JCH in anticipation/course of *Gudger* litigation | DG00383 | Chart obtained by JCH |
| ACP—draft-statement prepared by JCH for JGM | DG00384–392 | Undated draft statement prepared by JCH for the Governor re: H.B. 589 |
| R; WP—prepared/obtained by JRT in anticipation/course of *Gudger* litigation | DG00393–394 | 8-10-87 memorandum to Kirk, Hays and SAW from JRT, with undated chart prepared by JCH |
| R—confidential memorandum reflecting SAW's evaluation of potential members of Parole Commission | DG00395–396 | Memorandum re: Parole Commission with handwritten comments of SAW |
| R—confidential memorandum reflecting SAW's evaluation of potential members of Parole Commission | DG00397 | Memorandum re: Parole Commission with handwritten comments of SAW |
| WP—factual research obtained by JCH in anticipation/course of *Gudger* litigation | DG00398–399 | Judicial information |
| WP—factual research obtained by JCH in anticipation/course of *Gudger* litigation | DG00400–401 | Judicial information |
| WP—factual research obtained by JCH in anticipation/course of *Gudger* litigation | DG00402–403 | Judicial information |
| WP—factual research obtained by JCH in anticipation/course of *Gudger* litigation | DG00404–405 | Judicial information |
| WP—factual research obtained by JCH in anticipation/course of *Gudger* litigation | DG00406–407 | Judicial information |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| WP—factual research obtained by JCH in anticipation/course of *Gudger* litigation | DG00408–409 | Judicial information |
| WP—factual research obtained by JCH in anticipation/course of *Gudger* litigation | DG00410–411 | Judicial information |
| WP—factual research obtained by JCH in anticipation/course of *Gudger* litigation | DG00412–413 | Judicial information |
| WP—factual research obtained by JCH in anticipation/course of *Gudger* litigation | DG00414–415 | Judicial information |
| WP—factual research obtained by JCH in anticipation/course of *Gudger* litigation | DG00416 | 8–17–98 press release with handwritten notes of JCH |
| W | DG00417–431 | Undated ratified bill of H.B. 589 |
| WP—obtained by JCH in anticipation/course of *Preston* and *Gudger* litigations | DG00432 | Undated memorandum |
| WP—draft complaint prepared by counsel for co-plaintiffs | DG00433–439 | Undated draft complaint in *Crawley v. Gudger* |
| WP—draft complaint prepared by counsel for co-plaintiffs | DG00440–446 | Undated draft complaint in *Martin v. Gudger* |
| WP—obtained or prepared in anticipation/course of *Gudger* litigation | DG00447 | Chart of judges with handwritten comments of SAW |

C. SUPERIOR COURT JUDICIAL ELECTION LAW REFORM; FILE # 0554

| | | |
|---|---|---|
| W | DG00448–450A | 7–16–86 correspondence to Jones from Freeman with attachment |
| W | DG00451–452 | 7–16–86 correspondence to Jones from Freeman |
| W | DG00453–454 | 7–14–86 correspondence to Jones from Freeman re: Chapter 957 of the 1985 Session Laws |
| Public record | DG00455–459 | Undated ratified bill for S.B. 892 with ratified bill for S.B. 893 attached |
| W | DG00460–462 | 7–28–86 correspondence to Jones from Freeman with ratified bill for S.B. 1305 attached |
| W | DG00463–466 | 4–22–86 draft bill with highlighting of unknown source |
| ACP; WP prepared by legal intern (law student) on Governor's staff for JRT's use in advising the Governor; prepared in anticipation/course of litigation | DG00467–468 | 6–10–86 memorandum to JRT from Martin |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| ACP—in-house legal counsel communications used to advise the Governor | DG00469–470 | 5–22–86 memorandum to Purrington from SAW |
| W | DG00471–472 | 5–27–86 memorandum to public officials |
| W | DG00473–474 | 7–14–86 correspondence to Jones from Freeman |
| ACP—in-house legal counsel communications used to advise the Governor | DG00475–477A | 6–25–86 memorandum to JRT from SAW |

**D. JUDICIAL ELECTION REFORM (SAM'S ARTICLE)**

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| R | DG00478 | Undated handwritten note of SAW |
| W | DG00479–481 | 3–20–86 draft correspondence of SAW |
| W; public record | DG00482–489 | Undated typewritten note to unknown from K. Rotterman with 6–21–86 address by the Governor to the General Session of the N.C. Bar Association |
| W | DG00490–502 | 4–15–86 correspondence to the Governor from Vaughn with attachments |
| ACP—believed used by SAW in advising the Governor | DG00503–505 | Undated document believed prepared by SAW re: merit selection of judges |
| Public record | DG00506–508 | 4–23–86 Remarks to North Carolina Courts Commission by Purrington |
| W | DG00509–521 | 4–15–86 correspondence to the Governor from Vaughn with attachments |
| ACP—legal communication between SAW and the Governor | DG00522–524 | 5–14–86 memorandum to the Governor from SAW re: merit selection with attachments |
| W | DG00525–527 | 3 copies of 5–5–86 correspondence to the Governor from Wells |
| ACP—legal communication between SAW and the Governor; attached draft of document by SAW for the Governor | DG00528–529 | 5–13–86 memorandum to the Governor from SAW re: *Haith v. Martin* |
| ACP(?)—draft document prepared by SAW for the Governor's review (unable to determine if executed or sent) | DG00530 | 5–16–86 unsigned draft correspondence to Wells from the Governor prepared by SAW |
| ACP(?)—draft document prepared by SAW for the Governor's review (unable to determine if executed or sent) | DG00531 | 5–16–86 unsigned draft correspondence to Aycock from the Governor prepared by SAW |
| ACP—draft document prepared by SAW for the Governor's review (unable to determine if executed or sent) | DG00532 | 5–16–86 unsigned draft correspondence to Wells from the Governor prepared by SAW |
| ACP(?)—draft document prepared by SAW for the Governor's review (unable to determine if executed or sent) | DG00533 | 5–16–86 unsigned draft correspondence to Aycock from the Governor prepared by SAW |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| W | DG00534–537 | 1–29–85 correspondence to Aycock from Senator Ervin with attachments |
| W | DG00538 | 5–5–86 correspondence to the Governor from Aycock |
| W | DG00539–540 | 1–23–85 unsigned correspondence to Senator Ervin from Aycock unsigned |
| W | DG00541 | 1–29–85 correspondence to Aycock from Senator Ervin |
| W | DG00542 | 5–5–86 correspondence to the Governor from Aycock |
| W | DG00543–544 | 1–23–85 unsigned correspondence to Senator Ervin from Aycock |
| W | DG00545 | 1–29–85 correspondence to Aycock from Senator Ervin |
| ACP(?)—draft document prepared by SAW for the Governor's review (unable to determine if executed or sent) | DG00546–547 | 5–14–86 unsigned draft correspondence to Vaughn from the Governor prepared by SAW |
| Public record | DG00548–553 | 2 copies of 4–23–86 Remarks to North Carolina Courts Commission by Purrington |
| R | DG00554 | 5–12–86 memorandum to Purrington from Foster |
| R; W | DG00555 | 5–14–86 memorandum to Flood from SAW |
| ACP(?)—draft document prepared by SAW for the Governor's review (unable to determine if executed or sent) | DG00556 | 5–15–86 unsigned draft correspondence to Reynolds from the Governor prepared by SAW |
| ACP—legal memorandum prepared by SAW to the Governor | DG00557–559 | 5–14–86 memorandum to the Governor from SAW with attachment |
| W | DG00560–572 | 4–15–86 correspondence to the Governor from Vaughn with attachments |
| W | DG00573–576 | 3–19–86 correspondence to Bradshaw from SAW with attachments |
| W | DG00577–580 | 1–17–86 memorandum of SAW |
| Public record | DG00581–590 | 2 copies of 2–7–86 statement to the North Carolina Courts Commission on behalf of the Governor |
| ACP—legal communication between SAW and Governor | DG00591–596 | 5–14–86 memorandum to the Governor from SAW with attachment |
| ACP(?)—draft document prepared by SAW for review by the Governor (unable to determine if executed or sent) | DG00597 | 5–15–86 unsigned draft correspondence prepared by SAW for the Governor |

E. JUDICIAL SELECTION IN NORTH CAROLINA

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| WP—obtained by JRT in anticipation/course of *Preston* and this litigation | DG00598–599 | 12–88 report of Subcommittee |
| ACP—obtained by JRT to advise the Governor | DG00600–602 | Statutory legal research with handwritten comments and highlighting of JRT |
| W | DG00603–605 | Undated, "Judicial Selection in North Carolina", *The North Carolina State Bar Quarterly* |

| PRIVILEGE | BATES NUMBER | DESCRIPTION |
|---|---|---|
| W | DG00606–610 | Undated memorandum re: judicial selection |
| ACP; WP—used by JRT to advise the Governor; obtained by JRT in anticipation/course of *Preston* litigation | DG00611–612 | 12–88 report of Subcommittee with handwritten comments of JRT |
| W | DG00613 | Document of unknown origin, re: North Carolina Judicial Standards Commission |
| W; Public record | DG00614–617 | Summer/1988 speech presented to the Judicial Selection Study Committee given by Exum published in *The North Carolina State Bar Quarterly* |
| W | DG00618 | Undated "Briefly" N & O article "Two Lawyers Warn Against Judicial Appointment" |
| WP—Document obtained/prepared by SAW and JRT in anticipation/course of *Alexander v. Martin* litigation | DG00619–621 | 5–21–87 memorandum to the Governor from JRT with attachment prepared by SAW |
| W | DG00622–625 | Undated document titled "The Appointment of Judges in New Jersey" |
| Public record | DG00626 | 9–30–88 agenda for the Judicial Selection Study Commission |
| W—notes by JRT used to advise the Governor | DG00627 | Undated document obtained by JRT with his notes |
| W | DG00628–631 | 6–10–87 unsigned draft correspondence to Wells from the Governor prepared by JRT with attachments |
| W; R—not relevant to instant request | DG00632–646 | 4 copies of 11–6–86 memorandum to the Judicial Selection Committee from SAW |
| Public record | DG00647–797 | January 1988 Report of the Governor's Judicial Reform Commission for the State of Pennsylvania |

